[Civ. No. 10524. Third Dist. Mar. 22, 1963.]

GRACE I. WAYMIRE, as Special Administratrix, etc., Plaintiff and Appellant, v. PLACER JOINT UNION HIGH SCHOOL DISTRICT, Defendant and Respondent.

A. Leonard Bjorklund, Jr., for Plaintiff and Appellant.

Richard Smith and Wayne Wylie for Defendant and Respondent.

SCHOTTKY, J.—Grace I. Waymire, as special administratrix of the estate of Melvin C. Waymire, deceased, is the appellant in this court from an adverse judgment against the deceased in an action brought for breach of an employment contract and from a judgment of nonsuit on a second cause of action based on tort.

Melvin Waymire was employed as a bus driver by the sole defendant in this action, Placer Joint Union High School District. His major duty was to transport students to and from their homes and the school. On March 18, 1959, a 16-year-old girl, a student at the Placer Joint Union High School, and another student remained on the school bus after the other students had left. Waymire and the two students drove to the bus parking area where the two students got off. The two students walked to Waymire's car and entered it. The girl got in the front seat. Waymire soon joined them and a discussion about the seating arrangements on the bus ensued. The other student left the car, and then Waymire kissed the girl. This act was observed by other employees of the school district, and the incident was reported to the proper supervisorial employees. An investigation was conducted during which the girl admitted the kiss, and thereafter an informal hearing was had in the matter which Waymire did not attend because he was ill. Several persons made informal statements at the hearing

but the girl was not in attendance. After the hearing Waymire was discharged.

Waymire filed an action against the district, the first cause of action being for alleged wrongful discharge, and the second cause of action being for alleged damage for commission of tort.

At the trial, after plaintiff had rested his case, the court granted defendant's motion for a nonsuit as to the second cause of action; and after the trial was completed and the case submitted, it rendered judgment in favor of defendant. Plaintiff appealed and his wife as special administratrix of his estate has been substituted in his place on this appeal.

Two major points are raised on this appeal. The first question concerns the propriety of the court's action in granting a nonsuit on the count of the complaint based on tort. It was appellant's theory that a tort had been committed because he had been discharged without a fair hearing. It was alleged that as a result of the false and irresponsible charges made against Waymire he suffered a nervous collapse which required medical treatment; that as a result of the defendant's act he suffered humiliation, shame and mental suffering; that his reputation had been damaged, and so forth.

 We do not believe that the complaint stated a cause of action for tort against the district. As stated by our Supreme Court in the recent case of *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], at page 229:

"In *Muskopf* v. *Corning Hospital District, ante,* p. 211 [11 Cal.Rptr. 89, 359 P.2d 457], we held that the rule of governmental immunity may no longer be invoked to shield a public body from liability for the torts of its agents who acted in a ministerial capacity. But it does not necessarily follow that a public body has no immunity where the discretionary conduct of governmental officials is involved. While, as pointed out in the *Muskopf* case, a governmental agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. (*Hardy* v. *Vial*, 48 Cal.2d 577, 582-584 [311 P.2d 494]; *Coverstone* v. *Davies*, 38 Cal.2d 315, 322

[239 P.2d 876] ; *White* v. *Towers,* 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636] ; see *Barr* v. *Matteo,* 360 U.S. 564, 569 et seq. [79 S.Ct. 1335, 3 L.Ed.2d 1434].) The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation. (*Hardy* v. *Vial,* 48 Cal.2d 577, 582-583 [311 P.2d 494].)

" . . . . . . . . . . . . .

 ''With respect to the complaint against the district, the acts alleged, insofar as they came within the scope of authority of the trustees, were of a discretionary character. As we shall see in discussing the complaint against the individual defendants, the trustees were immune as to such acts. There is a vital public interest in securing free and independent judgment of school trustees in dealing with personnel problems, and trustees, being responsible for the fiscal well-being of their districts, would be especially sensitive to the financial consequences of suits for damages against the districts. It is also significant that, without holding a school district liable in tort for acts like those complained of, an employee from the outset has protection, in the form of mandamus or recovery for breach of contract, against consequences which would be among the most harmful and tangible, i.e., wrongful dismissal or suspension. (*Hancock* v. *Board of Education,* 140 Cal. 554, 561-562 [74 P. 44] ; *Main* v. *Claremont Unified School Dist.,* 161 Cal.App.2d 189, 192, 207 [326 P.2d 573] ; *Titus* v. *Lawndale School Dist.,* 157 Cal.App. 2d 822, 829-830 [322 P.2d 56].)

 ''The district is immune from tort liability for the alleged acts of the trustees within the scope of their authority, and familiar principles of agency preclude its liability for acts outside the scope of their authority. Accordingly, the complaint does not state a cause of action in tort against the district.''

In view of the decision in the *Lipman* case, we conclude that a school district in discharging employees is immune from suit in tort. As stated, there is a vital public interest in securing free and independent judgment in dealing with personnel problems. Therefore no cause of action in tort was stated and the nonsuit as to the second cause of action was proper.

Appellant contends that Waymire was not guilty of such

misconduct as to warrant his discharge. Appellant concedes that if Waymire was guilty of misconduct the issue of whether he was employed for a "specified term" has no significance because section 3005 of the Labor Code provides that a servant can be discharged for misconduct "whether or not engaged for a fixed term."

The following résumé of the evidence by the trial court is supported by the record:

"Without essential conflict, the testimony is that plaintiff was employed by the defendant as a bus driver, whose duty it was to transport students to and from their homes and the defendant's school; that on the day in question and prior thereto one of the passengers on the plaintiff's bus was a sixteen-year-old female student named Patricia Jean Leighton Medeiros; that on the day in question, after the other student passengers on plaintiff's bus had been discharged at the school, plaintiff proceeded to drive the bus to the bus barns, with Patricia Jean Leighton Medeiros and another male student aboard; that after the bus arrived at the bus barn area, the two students left the bus, and plaintiff drove the bus into the bus barn area; that thereafter he returned to a private automobile which was parked near one of the bus barns and got into the front seat thereof, in which said front seat was already seated the student Patricia Jean Leighton Medeiros. What transpired thereafter is in conflict.

"Without detailing the testimony of the defendant's witnesses, it can be summed up as follows: Patricia Jean Leighton Medeiros testified that while she and the plaintiff were sitting in the front seat of the automobile, the plaintiff kissed her. School authorities testified that Patricia admitted this to them later in the day. Three witnesses who looked through a hole in the bus barn at different times testified that they observed the plaintiff and the girl sitting in the front seat of the automobile. In addition, the three witnesses testified to the following: Witness Theodore Rogers testified that he saw the plaintiff kiss the girl. Louis Souza testified that he saw the plaintiff and the girl sitting close together in the front seat of the automobile holding hands. Myrtle Welch testified that he saw the plaintiff sitting in the middle of the front seat with the girl on the right side, and that plaintiff had his face some six inches in front of and away from the girl's face.

"Plaintiff denied that he kissed Patricia Jean Leighton

Medeiros, and denied any other conduct on his part that could be construed as being misconduct.

"In judging the credibility of the witnesses the Court has the right to scrutinize the manner of the witnesses while on the stand, and may consider their relation to the case, if any. All witnesses are, of course, presumed to speak the truth. This presumption, however, may be repelled by the manner in which he or she testifies and their interest in the case, if any, and by the character of his or her testimony.

"In this case Patricia Jean Leighton Medeiros testified that the plaintiff kissed her. Theodore Rogers testified that he saw this happen. Louis Souza and Myrtle Welch testified that they saw plaintiff and the girl in a position in the automobile which was consistent with the misconduct with which plaintiff is charged. None of these witnesses had any interest in the outcome of the case, and none were shown to have any bias or prejudice or ill feeling against the plaintiff."

What is misconduct will vary according to the nature of one's employment and is usually a question of fact for the trier of fact to determine. We believe the conduct of Waymire as shown by the evidence was such as to support the court's finding that "there was a wilful breach of duty by plaintiff, and plaintiff was guilty of misconduct in the course of his employment in that plaintiff did in the course of his employment, on March 18, 1959, kiss Patricia Jane Leighton Mederrous [*sic*], a 16-year-old female student at defendant, Placer Joint Union High School."

In 1 Labatt's, Master and Servant (2d ed.), section 297, page 926, the author states that in some classes of employment one of the implied conditions of the employment contract is that the employee refrain from conduct that is indecorous to a degree likely to endanger his own reputation and injure his employer's interests. The facts of this case fall within the rule enunciated. The standard of decorum of a 53-year-old driver of a school bus was breached when he engaged in osculatory activities with a 16-year-old girl student on the school premises. Certainly this conduct cannot be permitted by a school district.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.