[Civ. No. 32642. Second Dist., Div. One. Mar. 27, 1969.]

ROBERT M. SWAFFIELD, Plaintiff and Appellant, v. UNIVERSAL ECSCO CORPORATION et al., Defendants and Respondents.

SHINN INDUSTRIES, INC., et al., Plaintiffs and Respondents, v. ROBERT M. SWAFFIELD, Defendant and Appellant.

(Consolidated Actions.)

148

Samuel Maidman for Plaintiff and Appellant and Defendant and Appellant.

Grossman, Smaltz, Graven & Perry, Donald C. Smaltz, Keatinge & Sterling, Richard H. Keatinge and Robert Yale Libott for Defendants and Respondents and for Plaintiffs and Respondents.

FOURT, J.—Robert M. Swaffield appeals from a summary judgment granted to defendants Universal Ecsco Corporation (hereinafter sometimes called Ecsco), Shinn Industries, Inc. (hereinafter sometimes called Industries) and Clifford L. Shinn in an action by Swaffield to cancel a promissory note; from a second summary judgment granted to defendant Ecsco in an action for wrongful termination of Swaffield's employment; and from a third summary judgment granted to defendants Industries and Shinn in a libel action. Swaffield further purports to appeal from orders of the trial court in two other actions: (1) an order granting plaintiffs Shinn Engineering (hereinafter sometimes called Engineering), Industries and Shinn a partial summary judgment in their

action against Swaffield for breach of warranty, negligence, breach of fiduciary relationship and fraudulent misrepresentation; and (2) an order granting a partial summary judgment to Ecsco in a separate action instituted by Ecsco against Swaffield on similar grounds.

The five actions hereinabove referred to were, on motion, consolidated for trial prior to Swaffield's appeals. Each arises out of a transaction in which Engineering and Ecsco, and the shareholders of each, in order to obtain public financing, mutually agreed to the formation of Industries as a non-operating holding company to which the stock of both Ecsco and Engineering should be transferred in exchange for the receipt by their respective shareholders of a proportionate amount of the shares of Industries. It was contemplated that Industries should thereafter register its securities with the Securities and Exchange Commission (hereinafter sometimes called the S.E.C.) for public sale. The pertinent facts preliminary to the transaction and the general circumstances relating to the merger and the events subsequent thereto are disclosed by the pleadings and affidavits of the parties.

In early 1958 Swaffield and Stanley W. Stanick, not a party to this appeal, became the sole partners in Ecsco, a partnership which they organized to engage in business as an engineering consultant firm. Early in 1959 Ecsco was awarded contracts by the United States Post Office for the furnishing and installation of mechanized mail-flow systems. Ecsco thereafter engaged primarily in the design, building and installation of integrated electrical and mechanical semi-automatic control process and handling systems for use by governmental and private industrial organizations. Substantially all of Ecsco's business consisted of contracts to provide integrated control systems for the handling and distribution of mail within certain United States Post Office areas.

The Ecsco partners apparently became aware, in the course of performance of their post office contracts, that they could not generate sufficient working capital through internal sources. As a consequence, Swaffield and Stanick during late 1959 and early 1960 approached various underwriters and eventually contacted Myron A. Lomasney & Co. (hereinafter sometimes called Lomasney) in regard to public financing. Lomasney expressed interest and suggested that as a preliminary matter Ecsco should employ a national firm of accountants to prepare certified statements of the company's financial position. Ecsco accordingly obtained the services of Ernst &

Ernst, certified public accountants, to perform an audit. Thereafter, and on or about April 17, 1960, Ecsco was incorporated; the corporation acquired all of the assets and assumed all of the liabilities of the partnership; Swaffield and Stanick became the owners of all of Ecsco's issued and outstanding shares of common stock.

Meanwhile Engineering, a corporation engaged primarily in the performance of fixed price subcontracts for the fabrication of aircraft and missile components which it obtained from prime government contractors on the basis of competitive bids, also contacted Lomasney for the purpose of obtaining public financing. Lomasney concluded upon its review of the circumstances and suggested to each of the companies that it would be advantageous for Ecsco to combine with Engineering for underwriting purposes. Accordingly, negotiations were commenced which finally culminated in the approval and acceptance by both companies of a letter of intent written by Lomasney on or about November 10, 1960, outlining the terms for the consolidation of the companies under the ownership of Industries in anticipation of the registration of Industries' securities with the S.E.C. for a proposed public offering. The companies in essence agreed that they should merge and go public. In the course of the negotiations Ecsco had an audit prepared for the four-month period from the date of its incorporation in April to August 31, 1960, and each company made certain representations and warranties to the other in regard to their respective business and financial statements. Thereafter, on or about November 14, 1960, Industries was incorporated and subsequently acquired through an exchange of stock, made upon the basis of a written agreement incorporating the various representations and warranties of the parties, all of the capital stock of Engineering and Ecsco. Shinn became a director and president of the newly formed holding company. On or about November 28, 1960, following Industries' acquisition of Ecsco, Stanick became vice-president and a director and Swaffield became chairman of the board of Industries. The new executives of Industries continued to hold the respective offices in Engineering and Ecsco which they occupied prior to the merger. Shortly thereafter, Industries pursuant to agreement filed with the S.E.C. its original registration statement. Amendments thereto followed and finally, during March 1961, the securities of Industries were offered for sale to the public pursuant to its prospectus and public purchases of its securities were consummated.

In June 1961 Shinn, as president of Industries, became concerned over the apparent inaccuracy of cash flow projections and the excessive financial requirements of Ecsco, and he requested that Ernst & Ernst reaudit Ecsco's financial condition as of August 31, 1960. The Ernst & Ernst reaudit, completed in August 1961, revealed both an overstatement of inventory and an understatement of losses accrued by Ecsco as of August 31, 1960. The result was an overall inflation of the assets reported on the original financial statements prepared by Ernst & Ernst for Ecsco the year before. In September 1961 Industries disclosed this asset deficiency to the S.E.C., which agreed that it would neither issue a stop order nor suspend trading in Industries' stock if Ernst & Ernst would certify that the assets of Ecsco were now the same in total amount as they would have been had the value of its assets been as represented on Industries' registration statement already on file. Accordingly, Industries made a demand upon Swaffield and Stanick that each assume personal liability for a proportionate share of the total deficiency of approximately $372,137 to satisfy the condition imposed by the S.E.C., and on December 28, 1961, each executed to Ecsco a promissory note in the amount of $186,068.68. As a condition imposed by Ernst & Ernst, each note was secured by shares of Industries stock adequate in value to justify certification, as required by the S.E.C., that the deficit had been eliminated.

The relations between the parties deteriorated rapidly thereafter. Early in January 1962 Shinn sent to Josiah M. Scott, who was a director and substantial stockholder as well as a principal financial backer of the combined companies, a letter which detailed Shinn's dissatisfaction with Swaffield and his reputedly fraudulent manipulations of Ecsco's financial statements, and which further solicited Scott's support in terminating Swaffield's employment as an officer of Industries and Ecsco. Shinn therein stated his belief that Swaffield was responsible for falsification of the books and records of Ecsco and that his position as president should be terminated for the good of the combined companies. In February 1962 the Industries' board of directors revoked Swaffield's proxy to vote Ecsco's shares and thereafter Shinn, appointed as the new proxy holder, removed all the former directors of Ecsco and elected a new board which promptly terminated Swaffield's position as president of Ecsco.

After the termination of his employment as president of

Ecsco, Swaffield filed the several actions with which we are herein concerned and in which he appears as plaintiff. On or about May 9, 1962, he filed No. 795670 against Ecsco, Industries and Shinn for cancellation of the promissory note he made to Ecsco on or about December 28, 1961, and the return of the collateral security. On or about May 16, 1962, he filed in Orange County an action, which was in July 1962 transferred to Los Angeles County as No. 800729, against Shinn and Industries for damages for libel based upon the letter written by Shinn to Scott. On or about May 28, 1962, he filed action No. 796974 against Ecsco for termination of his employment as president.

Thereafter, on or about August 31, 1962, action No. 803288 was filed by Industries, Engineering and Shinn against Swaffield and others for damages inter alia for breach of warranty, misrepresentation, nondisclosure, breach of fiduciary relationship, negligence, and gross negligence. On or about the same date Ecsco also filed an action No. 803289 against Swaffield and others on similar grounds.

Finally, pursuant to a federal grand jury indictment dated January 19, 1966, criminal proceedings were instituted in the United States District Court for the Southern District of California, Central Division, against Swaffield and Stanick as coconspirators by reason of their participation in the falsification of the books and records of Ecsco and the submission to the S.E.C. of the inaccurate Ecsco financial statements which appeared in the prospectus under which Industries' stock was offered and sold to the public. Swaffield and Stanick were tried as codefendants and on August 26, 1966, were convicted as coconspirators for their participation in the preparation and the filing of false and fraudulent Registration Statements with the S.E.C. Swaffield was convicted on each of the four counts in the indictment, fined a total of $5,000 and placed on three years probationary sentence. His conviction was affirmed on appeal by the Ninth Circuit Court of Appeals on or about November 6, 1968, (*Swaffield* v. *United States* (9th Cir. 1968) 403 F.2d 666, rehearing denied December 17, 1968).

Following Swaffield's criminal conviction, and on or about October 17, 1966, his opponents in the civil litigation moved for summary judgment in the actions in which each participated, respectively, on the basis that Swaffield was a proven wrongdoer. To the affidavit filed by Clifford L. Shinn in support of each motion is attached a copy of the criminal judgment and probationary order of August 26, 1966, and a copy

of the grand jury indictment of January 19, 1966. Swaffield was found guilty as charged on each of the four counts in the indictment for conspiring with others "to defraud the United States by impeding, impairing, and obstructing the lawful functions of the Securities and Exchange Commission, an agency of the United States," in its protection of public investors, and to wilfully falsify records, thus committing further criminal offenses against the United States. The substance of the charges is that misstatements were made in financial statements as follows: (1) That the Ecsco partnership for the year ended December 31, 1959, declared a net loss of $1,169 when the loss was in fact over $125,000; (2) that after Ecsco's incorporation on or about April 17, 1960, misrepresentations were made of the financial position of the corporation for the first four months of operations ending August 31, 1960, in that (a) contracts in process stated as $544,610 were actually less than $175,000 and (b) the retained earnings deficit disclosed as $26,994 was in fact approximately $395,000. The overt acts upon which Swaffield's conviction was based, as charged by the indictment, were: (1) that during 1959 he and Stanick decreased accounts payable and increased inventory by $125,770 thereby reducing the loss reflected on the Ecsco partnership accounts by that amount; (2) that on or about August 24, 1960, Swaffield and Stanick suggested to the Ecsco controller that he shift the loss from the Philadelphia post office job to future post office jobs, and that the codefendants thereafter altered the books of Ecsco by removing certain ledger pages and inserting rewritten ledger pages to reduce the costs shown for the Philadelphia job and set these costs up as inventory to be used for future post office contracts, thus overstating earnings by about $372,137 as of August 31, 1960, and understating losses in a commensurate amount; and (3) pursuant to this scheme, the codefendants on or about August 24, 1960, sent a letter to Ernst & Ernst in Los Angeles declaring that the Philadelphia post office job was substantially completed. Financial statements based upon these falsified records were submitted to Engineering and to Shinn during negotiations for the formation of Industries and its acquisition of Engineering and Ecsco, and accordingly they were included as exhibits to the registration statements filed with the S.E.C. By virtue of these acts Swaffield was charged with the use of the mails to defraud and the making of untrue statements of material facts to the S.E.C., and with signing and causing to be filed

with the S.E.C. on behalf of Industries, the inaccurate and incorrect registration statement and amendments thereto.

From our review of the record we have determined that summary judgments were properly granted to the defendants in actions No. 800729, No. 796974 and No. 795670. The purported appeals taken by Swaffield from the court's orders for partial summary judgment in actions No. 803288 and No. 803289, are premature and improper.

Since the declarations in support of each motion for summary judgment relies upon the effect of Swaffield's criminal conviction which is asserted on grounds of collateral estoppel, we turn first to a consideration of the consequences of that judgment. The remedy of summary judgment is appropriate when the doctrine of res judicata in its subsidiary form of collateral estoppel can be used to refute all triable issues of fact suggested by the pleadings. (*Saunders* v. *New Capital for Small Businesses, Inc.,* 231 Cal.App.2d 324 [41 Cal.Rptr. 703]; *Smith* v. *City of Los Angeles,* 190 Cal. App.2d 112 [11 Cal.Rptr. 898]; *Olmstead* v. *Riley,* 135 Cal. App.2d 117 [286 P.2d 579]; *Gosnell* v. *Webb,* 66 Cal.App.2d 518 [152 P.2d 463].) Collateral estoppel may be invoked to conclusively resolve any issue necessarily determined in previous litigation between the same parties or their privies. There are three requirements for its application: (1) the issue decided in the prior adjudication must be identical to the issue presented in the action currently being litigated; (2) there must have been a final judgment on the merits in the previous action; (3) the party against whom the plea is asserted must have been a party or in privity with a party to the prior adjudicated action. (*Frazier* v. *Wasserman,* 263 Cal.App.2d 120 [69 Cal.Rptr. 510].) Despite the fact that criminal and civil actions from a practical viewpoint cannot be identical as to charge or as to parties, the California Supreme Court has held that ". . . [A]ny issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action" (*Teitelbaum Furs Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439]), with certain specified exceptions which are inapplicable to the present case. "To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements

of proof beyond a reasonable doubt [citation] and of a unanimous verdict [citation], the right to counsel [citation], and a record paid for by the state on appeal [citation]. Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards.'' (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra, p.* 606.) ▆▆▆ Swaffield's criminal conviction thus establishes conclusively that he falsified supporting records and made misrepresentations of material facts on the Industries registration statements filed with the S.E.C. Since the doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has finally been determined by a court of competent jurisdiction, we must first isolate the issues which were determined by the federal court and which have application to the cases presently before the California court.

The motions for summary judgments filed by respondents were based upon a federal district court conviction which was appealed by Swaffield, but while the appeals were pending in the California courts in the civil actions, the Ninth Circuit Court of Appeals affirmed Swaffield's conviction. (*Swaffield* v. *United States,* 403 F.2d 666, rehearing denied, December 17, 1968.) ▆▆ The appellate court, in the interest of justice, may properly take judicial notice of a prior judgment in a different case when the judgment is appropriately drawn to the court's attention and the opposing party has adequate notice and opportunity to be heard on the question of the effect of such judgment. (*Flores* v. *Arroyo,* 56 Cal.2d 492 [15 Cal.Rptr. 87, 364 P.2d 263].) Although the actions presently before this court were filed earlier, the federal criminal action proceeded to judgment first. ▆▆ ''Where there are two separate pending actions involving the same issue and same parties in different courts, it is the first final judgment, even though rendered in the second suit, that renders the issue res judicata in the other suit. . . . where a judgment becomes final while an appeal from a judgment in another action presenting the same issue between the same parties is pending, the first final judgment may be brought to the attention of the appellate court in which the appeal is pending and may be there relied upon as res judicata. [Citations.]'' (*Palm Springs Paint Co.* v. *Arenas,* 242 Cal.App.2d 682, 688 [51 Cal.Rptr. 747].) ▆▆ ▆▆ Although the California rule is that a judgment is not final for purposes of collateral

estoppel until final disposition on appeal (Code Civ. Proc., § 1049; *Robinson* v. *El Centro Grain Co.*, 133 Cal.App. 567 [24 P.2d 554]), under the federal rule which is the law of the forum, the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of res judicata or collateral estoppel (*Huron Holding Corp.* v. *Lincoln Mine Operating Co.*, 312 U.S. 183 [85 L.Ed. 725, 61 S.Ct. 513]; *Deposit Bank* v. *Frankfort*, 191 U.S. 499, 520 [48 L.Ed. 276, 284, 24 S.Ct. 154]). Accordingly, although Swaffield's counsel declares that a petition for certiorari has been filed with the United States Supreme Court, we conclude that for purposes of collateral estoppel respondents are entitled to assert Swaffield's criminal conviction as conclusive proof that he committed the acts charged by the indictment. The issue then to be determined is whether this evidence and the other material contained in the respondents' affidavits is in each case sufficient to entitle them to summary judgments.

I *Libel Action No. 800729*

■ Swaffield's complaint for libel is founded upon a letter written by Shinn in his capacity as an officer and director of Industries to Scott as a director and substantial holder of Industries' securities. Swaffield avers that he has for some years occupied important executive positions with various companies; that he is well known and has a reputation for ability and truthfulness in the financial community; that on or about January 4, 1962, Shinn wrote to Scott, who is also vice-president of Laird & Company of New York City, the letter which is attached to and incorporated by reference in the complaint, with the intention of having Swaffield's position as president of Ecsco terminated; that the letter was republished by Shinn and Scott to unnamed persons not further described; that the contents of the letter were false and the letter was composed by Shinn with malicious intent. The letter is a rambling informal 17-page document in which declarations of fact, assumption, opinion, conclusion and commentary relating to Swaffield's conduct and business character as disclosed by his activities from the time immediately prior to the merger up to the date of the letter are almost inextricably intermingled. Shinn first states that it is his intention to solicit Scott's support in having Swaffield fired and in making other operational changes which he considers essential to Industries' future success, and to which he would like to have Scott's reaction from an investor point of view;

Shinn thereafter purports to describe the condition of Ecsco as of the date of the letter. The letter in essence declares that during its brief life Ecsco sustained continuing operating losses which Swaffield hid in consistently larger contracting jobs; that Swaffield manipulated the allocation of costs to specific jobs by covering these with progress payments made by the post office for other jobs on Swaffield's personal certification that the inventory material was at the jobsite; that Swaffield obtained secret profits from sales of materials made to Ecsco by three subcontracting companies in each of which Swaffield owned a substantial individual interest; that Swaffield fraudulently failed to disclose the common ownership of these companies either to Industries or to the S.E.C.; that Swaffield's overwhelming lust for big deals and prestige instead of net corporate profits adversely affects his business judgment; that Swaffield is, in effect, guilty of incompetence and poor management of Ecsco for which there is no cure except the termination of his employment; that Swaffield blames Shinn for the situation which developed out of the deficiency revealed by the reaudit which Industries disclosed to the S.E.C.; and that he believes that Shinn attempted to defame him to others; that Swaffield is uncooperative and that he told Ecsco employees after the merger not to send financial information to Shinn; that there is no question in anyone's mind that the deficiency resulted from fraud and Shinn has to defend to others the fact that despite the fraud Swaffield is still employed by Ecsco; that Ernst & Ernst learned that Ecsco's records were removed during the audit as of August 31, 1960, and were later returned; that Swaffield further improperly attempted to perpetuate the activities of his three undisclosed affiliated companies with public funds; that Swaffield paid excessive salaries and condoned thefts of Ecsco's funds by certain employees by continuing their employment after discovery of irregularities; and that Swaffield realized personal gain from Ecsco's operations while the company sustained losses.

Shinn and Industries by answer admit that on or about January 10, 1962, Shinn wrote and sent to Scott in an envelope marked "Personal and Confidential" a letter similar to the letter incorporated in the complaint, but deny its publication "to or among any persons not interested therein;" and allege that in writing the letter Shinn acted in good faith, without malice, and in an honest belief that such action was taken in the proper discharge of his duties as an officer and

director and in the best interests of Industries. The answer avers as affirmative defenses (1) that the contents of the letter are true and that Shinn at all times material had probable cause for believing the contents to be true, and (2) that communication of the contents of the letter by respondents was limited to properly interested persons.

Finally, in October 1966, following Swaffield's criminal conviction, Shinn and Industries moved for summary judgment. Shinn's supporting affidavit alleges the circumstances hereinbefore related concerning the formation of Industries; its acquisition of Ecsco on the basis of prior representations and warranties of Ecsco's financial condition made to Shinn and Industries; the sale of stock to the public; and the fact that Shinn discovered that an overstatement of Ecsco's assets as of August 31, 1960, in the amount of approximately $372,137 was made by Swaffield and Stanick. Shinn further states: "When affiant had determined that plaintiff was responsible for the aforesaid deficiency in assets, affiant and others made a demand upon plaintiff and Stanley W. Stanick that each of them assume personal liability for one half of the deficit in the amount of $372,137, being the sum of $186,068.60 each, and execute a promissory note in that amount to be secured by stock of Shinn Industries, Inc. Plaintiff Robert M. Swaffield and Stanley W. Stanick agreed to and did each execute promissory notes containing the terms and conditions and in the face amount as stated in Exhibit A to the consolidated case of *Swaffield* v. *Universal Ecsco Corporation*, No. 795670. This note was executed on December 28, 1961." Shinn declares that "Upon being satisfied of plaintiff's responsibility for the falsification of the books and records of Universal Ecsco Corporation, which responsibility and liability therefore was evidenced by the execution of his promissory note as aforesaid," he determined that Swaffield's employment by Ecsco should be terminated and within one week after the note was executed Shinn wrote the subject letter to Scott. Shinn in addition declares that the criminal conviction of Swaffield and Stanick on August 26, 1966, for conspiracy in the wilful filing with S.E.C. of false and fraudulent registration statements with the S.E.C. which "conclusively established that plaintiff had falsified the books and records of Universal Ecsco Corporation during August 1960, so as to understate that corporation's losses and overstate its assets in the approximate amount of $372,137. This conclusively establishes the defense of truth to the allegations

of libel in the complaint herein." Shinn denies republication to any except properly interested persons and he points to specific accusations and statements in the letter and quotes certain phrases, to illustrate and prove probable cause and truth. A certified copy of the federal grand jury indictment dated January 19, 1966, and the judgment of conviction dated August 26, 1966, are attached as exhibits and incorporated by reference in the affidavit.

"[T]he publication must be both false *and* unprivileged in order that it shall constitute an actionable libel." (*Snively* v. *Record Publishing Co.*, 185 Cal. 565, 574 [198 P. 1].) The pleadings, the letter, and Shinn's affidavit all disclose the existence of a qualified privilege for the communication directed by Shinn to Scott. Where the facts and circumstances under which a defamatory publication is made are not disputed, the question of privilege is one of law. (*Freeman* v. *Mills,* 97 Cal.App.2d 161 [217 P.2d 687] ; *Jones* v. *Express Publishing Co.,* 87 Cal.App. 246 [262 P. 78].) "A privileged publication or broadcast is one made— . . . (3) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, . . ." (Civ. Code, § 47 subd. 3.) "' . . . [W]here the complaint discloses a case of qualified privilege, no malice is presumed' . . . This is because 'the very privilege creates a presumption that the communication is used innocently and without malice. [Citations.]' " (*Lesperance* v. *North American Aviation, Inc.,* 217 Cal.App. 2d 336, 341 [31 Cal.Rptr. 873].) See also Civ. Code, § 48.) The qualified privilege may be lost, and Swaffield in his complaint alleges that Shinn entertained toward him feelings of ill will and employed this method to malign Swaffield to his acquaintances and members of the financial community, including Scott himself. If, in fact, Shinn did not have probable cause for his statements, even though he enjoyed a position of qualified privilege in relation to Scott because of their mutual interest in Industries and positions on its board of directors, malice might be inferred. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412 [42 Cal.Rptr. 449, 398 P.2d 785].)

Shinn, however, demonstrates by his affidavit not only the existence of qualified privilege, but also facts to substantiate probable cause for the belief that his statements were true,

and Swaffield's conviction establishes that insofar as the falsification of records is concerned, the truth was conclusively proven. ▇ Truth is a complete defense against civil liability for defamation regardless of the bad faith or malicious purpose of the publisher of the material. (*Washer* v. *Bank of America,* 87 Cal.App.2d 501 [197 P.2d 202].) ▇ Shinn in his letter accused Swaffield of fraud and falsification of records, and the showing made of his criminal conviction constitutes a complete defense in regard to these statements. (*Glenn* v. *Gibson,* 75 Cal.App.2d 649, 661 [171 P.2d 118]; cf. *Gilman* v. *McClatchy,* 111 Cal. 606 [44 P. 241].) ▇ Although the burden of pleading and proving truth are on the defendant (*Lipman* v. *Brisbane Elementary School Dist.,* 55 Cal.2d 224, 233 [11 Cal.Rptr. 97, 359 P.2d 465]), it is not essential that Shinn's affidavit justify or show the truth of every word of the allegedly defamatory material; it is sufficient that he prove the substance of the charge to be true. (*Heuer* v. *Kee,* 15 Cal.App.2d 710, 714 [59 P.2d 1063].) ▇ Swaffield's conviction establishes that specific statements of fact contained in Shinn's letter were true. Based upon the reaudit, Swaffield's close connection with Ecsco's financial affairs, and the circumstances relating to the disclosure of the deficiency, including Swaffield's execution of the promissory note, Shinn had reasonable cause to believe that Swaffield had engaged in business misconduct and to write to Scott to enlist his support in terminating Swaffield in the best interests of Industries.

We conclude that the motion of respondents for summary judgment in the libel action was properly granted. Swaffield's tardy counteraffidavit in support of his petition for reconsideration after summary judgment granted not only fails to state that the facts therein related are within his personal knowledge and that he could so testify in court, but it merely restates allegations from his complaint and conclusionary statements. The single statement of fact therein is that Ernst & Ernst effected a $100,000 compromise settlement of its alleged liability in actions No. 803288 and No. 803289 instituted by Industries and Ecsco (relating to the same transaction and also consolidated herein), and he argues that this proves that the accounting firm and not he, Robert Swaffield, is the culprit accountable for the deficiency in assets. Shinn's affidavits, on the other hand, strictly construed as the movant's affidavits must be under the law (Code Civ. Proc., § 437c), disclose a complete defense. No triable issue of fact existing the motion was correctly granted.

II *Action for Damages for Termination of Employment*

▇▇▇ Swaffield instituted action No. 796974 solely against Ecsco on a claim for damages for breach of a contract of employment or for wrongful termination of his position as president of the corporation. Swaffield in his complaint avers that since the time of Ecsco's incorporation on or about April 17, 1960, and until on or about February 13, 1962, he was and continued to be president; that his appointment as president was confirmed on May 23, 1961, and again at about 11:30 a.m. on or about February 13, 1962, by resolution of the board of directors; that at about 3 p.m. on February 13, 1962, he was informed at a meeting of either the board of directors or the shareholders of Ecsco that his position as president was terminated; that after February 13, 1962, although he made demand, he received no further salary; that Ecsco notified every person and company with whom it did business, including the United States Post Office Department, that Swaffield was no longer employed by the corporation and that as a consequence Swaffield was forced to abandon his services to Ecsco; that while employed as president of Ecsco, Swaffield performed his duties and fulfilled his responsibilities; that the termination of his employment was ''contrary to the employment agreement of plaintiff with defendant corporation pursuant to the resolutions of the Board of Directors . . .'' set forth verbatim in the complaint which merely specify that he is to receive an annual salary originally $25,000 increased to $32,500 as of July 1, 1961; that said termination was wrongful and without cause; that Swaffield attempted but was unable to find other employment and that as of the time of filing the complaint he remains willing to serve for the ''remainder of said contract.'' Ecsco by answer admits the resolutions duly passed by the Ecsco board of directors as set forth in the complaint, admits the termination of Swaffield's employment on or about February 20, 1962, and that Swaffield received no salary after February 15, 1962, but alleges that he made no demand for additional salary payments and denies that he rendered services to Ecsco pursuant to a contract of employment. As affirmative defenses the answer avers (1) that no employment contract existed between the parties; (2) that good cause existed for the termination of Swaffield's employment; (3) that Swaffield failed to use due diligence to obtain other employment; and (4) by way of counterclaim alleges advances made to Swaffield by Ecsco while he was employed as its president.

Shinn's affidavit in support of Ecsco's motion for summary judgment states that from November 14, 1960, to the date of his affidavit Shinn has continuously occupied the office of chairman of the board of directors of Engineering and that of director and officer of Industries; that Shinn was also a director of Ecsco before the termination of Swaffield's position and that thereafter and on or about February 20, 1962, Shinn became president of Ecsco and occupied that position until his resignation on or about September 13, 1963. Shinn reiterates the facts and circumstances surrounding the formation of Industries and its acquisition of Engineering and Ecsco, the misrepresentations made by Swaffield both during merger negotiations and in the S.E.C. registration as later proven by his criminal conviction. Shinn further ''unequivocally states'' that Swaffield had no contract of employment with Ecsco and that his employment by the corporation was terminable at will; that prior to February 13, 1962, Swaffield held the proxy to vote Ecsco's stock, all of which was owned by Industries; that when Shinn discovered from the Ernst & Ernst reaudit that there was good reason to believe that Swaffield had conspired to falsify the books and records of Ecsco, he concluded that Swaffield's employment as Ecsco's president should be terminated; that at a duly authorized board of directors meeting on February 13, 1962, Industries revoked Swaffield's proxy and designated Shinn as proxy holder in place and stead of Swaffield; that Shinn, holding the proxy to vote Ecsco's shares, voted to remove all the directors and elected a new board; that the new board of directors of Ecsco held a meeting on or about February 20, 1962, and terminated Swaffield's employment as president upon good cause to believe that Swaffield falsified Ecsco's books and records; and that Swaffield was then and there notified of the termination. Finally Shinn incorporates a certified copy of the judgment and indictment relating to Swaffield's criminal conviction, and declares that Swaffield's conduct in overstating Ecsco's assets in the amount of about $372,137 was the reason for his dismissal from Ecsco's employ as conclusively established by his criminal conviction. Swaffield's purported counteraffidavit which was not filed until his petition for reconsideration after summary judgment granted, sets forth merely argumentative, conclusionary statements denying that he was terminated for good cause and charging that his termination was the result of a preconceived plot on the part of Shinn.

We conclude that summary judgment was properly rendered in favor of Ecsco. Employment agreements calling simply for the rendition of services, absent an additional consideration or the existence of an interest which would render termination contrary to law or public policy, are terminable at the will of either employee or employer. (Lab. Code, §§ 2922, 3001.) Swaffield was one of the principal shareholders of Ecsco prior to its acquisition by Industries and subsequently became one of Industries' principal shareholders; he was active in management and served as a director of both companies and Ecsco's president. While Swaffield held Ecsco's proxy, as admitted by Shinn, he could exercise control over the company; but neither in his complaint nor in his tardy counteraffidavit does Swaffield allege that his proxy was irrevocable, or that the procedure used to effect his removal as either a director or president of Ecsco was unlawful, or that the act of the board of directors in terminating his employment was ultravires. (*Marin* v. *Jacuzzi*, 224 Cal.App.2d 549, 554 [36 Cal.Rptr. 880].) Nor does Swaffield allege that he had a contract with Ecsco for a definite term or period of time or that there was consideration for his employment in addition to the services which it was anticipated he would continue to render as an officer of the corporation.

 "Under the terms of an 'at will contract,' the appellant can quit at any time, and his employer can discharge him at any time, with or without cause [citations]. . . . Our courts have consistently held that in such a confidential relationship, the privilege is absolute, and the presence of ill will or improper motive will not destroy it [citations]." (*Marin* v. *Jacuzzi, supra*, p. 553.)

 If Swaffield held a contract for a definite period it was incumbent upon him to allege that fact. "Since his employment was for no definite or specified period and since no consideration was given therefor other than the rendition of services, it was terminable at will." (*Levy* v. *Bellmar Enterprises*, 241 Cal.App.2d 686, 689 [50 Cal.Rptr. 842].) The only evidence of an agreement for Swaffield's employment is in the portions of the minutes set forth in his complaint, and admitted by Shinn's affidavit. Swaffield does not, even in his tardy counteraffidavit, contradict Shinn's declaration that no contract of employment existed except as represented by the minutes of the board of directors, which only specify Swaffield's annual salary. In the absence of other evi-

dence (*Wilson* v. *Red Bluff Daily News*, 237 Cal.App.2d 87, 91 [46 Cal.Rptr. 591]), the minutes indicate at best a one-year contract since the term of employment if not otherwise set, may be deemed to be the term used for estimation of wages (Lab. Code, § 3001). Even if there were evidence from which it could properly be inferred that Swaffield had a contract for a specific term, Shinn's affidavit demonstrates that good cause was present for Swaffield's discharge on the basis of the reasonable belief at the time, subsequently proven to be fact, that he falsified the books and records of Ecsco prior to the merger to overstate its asset position. This wilful breach of duty to the corporation or misconduct in service while holding a position of confidence as a company officer and director constitutes ample legal cause for discharge. (Lab. Code, §§ 2924 and 3005, subd. (b); *Waymire* v. *Placer Joint Union High School Dist.*, 214 Cal.App.2d 372 [29 Cal.Rptr. 459].)

## III *Action to Cancel Promissory Note*

Case No. 795670 is an action by Swaffield against Ecsco, Industries and Shinn for cancellation of the promissory note to Ecsco dated December 28, 1961, and the return of his security on grounds that there was no consideration for execution of the note or that its execution was induced by respondents' fraudulent representations. Swaffield alleges that he executed the promissory note, a copy of which is attached to the complaint and incorporated therein by reference,[1] while president of Ecsco and that he pledged 33,000

---

[1]The terms of the promissory note, insofar as pertinent, are as follows:
"FIVE YEARS AFTER DATE for value received, the undersigned promises to pay to UNIVERSAL ECSCO CORPORATION . . . the sum of One Hundred Eighty-Six Thousand Sixty-Eight and 60/100 Dollars ($186,068.60), without interest provided payment is made in full on or before the due date, but with interest at the rate of seven per cent (7%) per annum on any principal at the due date hereof remaining unpaid, such interest to accrue from said due date until such unpaid principal is paid in full. In lieu of payment hereunder the undersigned may surrender 43,750 shares of the presently outstanding Common Stock $.10 par value of Shinn Industries, Inc. or the amount of securities or other property into which such shares may be reclassified, or all property received in exchange for or on account of such shares, including all stock dividends paid or payable upon such shares.

". . . . . . . . . .
"This note is secured by securities deposited into escrow under Escrow Instructions of even date herewith.
"This note is given in connection with a transaction pursuant to which on November 28, 1960 Shinn Industries, Inc. acquired all of the outstanding shares of the capital stock of Universal Ecsco Corporation, a Delaware corporation, on the basis, among other things, of the assets

shares of Industries stock owned by him as collateral security for its payment; that Ernst & Ernst independently determined the value of the contracts in process when they prepared Ecsco's original financial statements as of August 31, 1960, but that when Ernst & Ernst reaudited the prior year's books and records during August 1961 a different accounting method was applied and this resulted in a $372,137.20 decrease in contracts in process which was treated as an Ecsco asset deficiency; that because of the S.E.C. registration and the public sale of Industries' securities, Industries disclosed to the S.E.C. the purported deficiency in assets; that to avoid a stop order or other protective or disciplinary action by the S.E.C. demand was made that Swaffield should execute and secure the subject promissory note; that Swaffield refused until he was induced by respondents to accept liability for one half of the deficiency in reliance upon their representations: (1) that Swaffield could be criminally prosecuted; (2) that Swaffield would be credited with any reduction in Industries' income tax liability resulting from the tax loss carry-forward on account of the deficiency; (3) that Swaffield would not have to use personal funds to repay the note obligation because he would receive favorable stock options from Industries; (4) that Swaffield would be permanently employed as president of Ecsco at an annual salary of $32,500 plus bonuses; (5) that Swaffield's stock would be enhanced in value by his performance of services for Ecsco; and (6) that Swaffield would receive these benefits because he had procured $8 million in post office contracts for the company. Swaffield further avers that he acted in reliance upon these promises which were false and were known to respondents to be false at the time they were made, but that he in fact received no

---

and liabilities of Universal Ecsco Corporation, and the purpose of this note is to permit Shinn Industries, Inc. to effect an adjustment in certain of the assets of Universal Ecsco Corporation shown in such corporation's financial statements as 'Contracts in process—Note M' which were subsequently determined to have been over-stated in the approximate aggregate amount of $372,000. It is understood that the adjustment to be made in such assets may also result in an increase in the net operating loss of Universal Ecsco Corporation for the year ended April 30, 1961, and Shinn Industries, Inc., by accepting delivery of this note agrees with the undersigned that if the readjustment of earnings of Universal Ecsco Corporation results in a tax loss carry-forward, which can be utilized by Shinn Industries, Inc. in future operating periods, it will credit against the principal balance owing on this note an amount equal to any benefit derived by Shinn Industries, Inc. as a result of income tax savings made possible by the utilization of such loss carry-forward, such credit to be given, however, only at and as of the time this note is paid in full.''

consideration for executing the note and that thereafter, on or about February 13, 1962, his employment as president of Ecsco was terminated.

By answer respondents admit that the complaint incorporates a true and correct copy of the promissory note and allege full and adequate consideration therefor as follows: (1) the S.E.C. agreement not to discipline Industries by stop order or otherwise, (2) Ecsco's agreement not to sue Swaffield to recover the deficiency, (3) Ecsco's agreement to allow Swaffield five years to pay the obligation, (4) Ecsco's agreement that the obligation shall be non-interest bearing for the five-year period, (5) Ecsco's agreement to accept surrender of the pledged shares in full satisfaction of the obligation, (6) Industries' agreement to credit against the note's principal balance any adjustment in Ecsco's assets resulting from tax loss carry-forward due to the deficiency. The answer admits disclosure of the deficiency to the S.E.C. to avoid disciplinary action, but denies any false or fraudulent representations, and avers that Swaffield agreed, without objection or inducement, to comply with the demand made upon him to execute the promissory note prior to the disclosure to the S.E.C. The issues thus presented are (1) whether Swaffield executed the note in reliance upon respondents' alleged representations or for other valid consideration, and (2) if representations made by respondents, or any of them, constituted a material inducement to Swaffield to execute the note, were such promises false and made with intent to mislead.

Shinn's affidavit in support of respondents' motion for summary judgment alleges his executive positions with Engineering and Industries and restates the facts and circumstances hereinabove related concerning the formation of Industries, the merger and the public offering of Industries' stock, the warranties and representations of Ecsco's financial condition, the subsequent discovery of a substantial deficiency in Ecsco's asset position as of the time of the merger, and disclosure to the S.E.C. which agreed not to issue a stop order or take other disciplinary measures only if Ernst & Ernst would certify that Ecsco's assets were in "the same total amount as the value of the assets that appeared on the financial statements which were contained in the registration statement on file with said Commission." Shinn further declares that upon demand Swaffield voluntarily assumed personal liability and executed the promissory note for one-half of the deficit or $186,068.60 secured by Industries stock; that it was

agreed as provided in the note that Swaffield could surrender his pledged stock in lieu of paying the obligation; that ultimately Swaffield was convicted in federal court on criminal charges of falsification of Ecsco's books and records, pursuant to the certified copy of the judgment and indictment attached and incorporated in the affidavit; and that his conviction conclusively establishes ''that the note in question was, in fact, executed with consideration and that there were no misrepresentations made to plaintiff by affiant or any other defendant in connection therewith.'' Swaffield's purported counteraffidavit filed in support of his motion for reconsideration after summary judgment granted is of no relevance because it merely repeats the general allegations of the complaint that he executed the note and gave security without consideration and in reliance upon respondents' false representations, denies that he falsified records and blames the deficiency on the negligence of Ernst & Ernst, and alleges without supporting documentation that Shinn and Industries executed a covenant not to sue with respect to any sums they might ever claim to be due on the note.

The issue upon a motion for summary judgment is whether the moving party's affidavit states facts which, if proved, would support a judgment in his favor. Where the defendant is the moving party, he must set forth with particularity competent evidentiary facts sufficient to establish every element necessary to sustain a judgment in his favor. (*Snider* v. *Snider,* 200 Cal.App.2d 741 [19 Cal.Rptr. 709].)

''While the language of section 437c . . . superficially might seem to cast correlative burdens upon both parties, there is no obligation on the opposing party . . . to establish anything by affidavit unless and until the moving party (defendant[s] here) has by affidavit stated ' ''facts establishing *every element* necessary to sustain a judgment in his favor.'' ' [Citation.] That means a defendant must show clearly that plaintiff's 'action has no merit.' Summary judgments cannot be granted by 'default' [citation]. Thus a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by an uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established. The burden is upon defendant to rule out *all possible merit* and, . . . the law is exacting in its requirements upon a defendant who seeks to meet that burden.'' (*Canifax* v. *Hercules Powder Co.,* 237

Cal.App.2d 44, 49-50 [46 Cal.Rptr. 552].) ■ The supporting affidavits of the defendants " '. . . are responsive in nature and are necessarily addressed to the complaint. It is within the contemplation of section 437c that the factual matters which he sets out in such affidavits are to take their significance upon a consideration of the complaint.' " (*Thornton* v. *Victor Meat Co.*, 260 Cal.App.2d 452, 462 [67 Cal.Rptr. 887].) ■ Only if the affidavits of the moving party, considered in the light of the issues raised by his pleadings, together with the admissions and affirmative allegations set forth in the pleadings of the adverse party would, standing alone, support the motion for summary judgment does the court look to the counteraffidavits, if any.

■ The promissory note attached to and incorporated in Swaffield's complaint is evidence of the acknowledgment by him of a legal obligation. The note, executed only by Swaffield, does not purport to constitute a fully integrated agreement, hence extrinsic evidence is not only admissible but essential to determine the validity and binding character of the obligation which Swaffield attempts by his complaint to disclaim. Swaffield's subsequent criminal conviction refutes the inference conveyed by the allegations of the complaint that Ernst & Ernst was exclusively responsible for erroneously reporting the deficiency in Ecsco's assets, and establishes that Swaffield wilfully and deliberately falsified records upon which Ecsco's financial statements were based. After Swaffield's falsifications and the Ecsco deficiency came to the attention of Industries, it was reported to the S.E.C. in order to avoid a stop order or other disciplinary action which would presumably have had an adverse effect upon Industries' securities, and a demand was made that Swaffield should execute and secure the subject promissory note. It is clearly apparent from the Shinn affidavit that at the time the demand was made that Swaffield thus assume personal liability for one half of the Ecsco deficiency, Shinn and Industries possessed evidence sufficient to prosecute Swaffield criminally or to seek civil restitution for the loss from Swaffield. Since Swaffield's subsequent criminal conviction establishes conclusively his acts of falsification of Ecsco's records, and there is no inference that respondents knew about or participated therein, an agreement between the parties that Swaffield could settle his liability to respondents without litigation and on reasonable terms of payment (five years interest free with the option to surrender his pledged stock at any time in full satisfaction of

the debt) constitutes valid consideration for execution of the note and delivery of security.

As to the alleged misrepresentations, denied categorically by respondents' affidavit, not only is Swaffield's tardily filed counteraffidavit ineffective for any purpose, but his complaint fails, on its face, to allege that respondents or any of them made false representations with the intention to induce Swaffield to rely and to act thereon to his detriment. Two of the allegedly false representations are patently true: (a) that Swaffield could be criminally prosecuted, and (b) that at such time as the note is paid in full he is to be credited with tax benefits, if any, accruing to the companies from the tax loss carry-forward as confirmed by the note and the Shinn affidavit. Two other statements, the alleged representations that his stock would increase in value and that certain benefits would be received by him because he procured substantial post office contracts, are mere statements of opinion and reason which do not constitute actionable fraud. The purported agreement for permanent employment is generally treated as terminable at will but would be, in any event, terminable for good cause even if based upon consideration in addition to services; Swaffield's remedy for termination would be an action for breach (see section II, *supra*) rather than cancellation of the note. Finally, it is true that Swaffield could avoid personal liability on the note, not by the use of stock options, as alleged, but by the option specifically granted him in the note, to surrender the pledged security in full satisfaction and discharge of the obligation. We conclude that respondents' affidavits demonstrate adequate consideration for the execution of the note and their denial of misrepresentations in general terms is sufficient where, as here, it is clear from the terms of the pleading and the affidavit, taken together, that no material, actionable misrepresentations are alleged. Summary judgment was therefore properly granted.

We turn to the question whether the orders granting partial summary judgments are properly appealable orders. Although there is specific statutory authority for the trial court to grant orders for so-called partial summary judgments (Code Civ. Proc., § 437c), such orders are not appealable and their propriety may be considered only upon an appeal from the final judgment ultimately rendered in the case. ''The statute contemplates the double steps of an *order* striking out the answer or dismissing the complaint, followed by entry of *judgment* in favor of the moving party. . . . Provision is also

made for a *partial summary judgment* . . . ; 'the cause of action may be *severed* accordingly, and the action may proceed as to the remainder of such claim.' In such a case the judgment is not entered until the termination of the action." (2 Witkin, Cal. Procedure (1954) p. 1717.) Where trial is bifurcated and only the issue of damages remains to be tried, appeal from first part of judgment is premature.

The trial court granted partial summary judgments to Industries, Engineering and Shinn in case No. 803288 determining on the basis of the plaintiffs' affidavit and evidence of Swaffield's conviction that Swaffield was liable for breach of warranty and for making false entries in the books and records of Ecsco in violation of California Corporations Code section 3018. Partial summary judgment was granted to Ecsco in case No. 803289 on the basis of Shinn's affidavit and evidence of Swaffield's criminal conviction the court determining that Swaffield was liable to the plaintiff for material factual misrepresentation in connection with Ecsco's business and operations and for making false entries on Ecsco's books and records in violation of California Corporations Code section 3018. In each of the foregoing cases although liability was determined the issue of the measure of damages was reserved for trial. Where the trial is bifurcated and the issue of damages remains to be tried, appeal from the interlocutory judgment of liability is premature. (*Louie Queriolo Trucking, Inc.* v. *Superior Court,* 252 Cal.App.2d 194 [60 Cal.Rptr. 389]; *McCarty* v. *Macy & Co.,* 153 Cal.App.2d 837, 840 [315 P.2d 383]; *Lopes* v. *Capital Co.,* 192 Cal.App.2d 759 [13 Cal.Rptr. 787]; *Mays* v. *Disneyland, Inc.* 213 Cal.App.2d 297, 298 [28 Cal.Rptr. 689].) The orders granting partial summary judgment in the foregoing cases may on no basis be considered appealable.

Accordingly, Swaffield's purported appeals in cases No. 803288 and No. 803289 are dismissed. The summary judgments granted in cases No. 800729, 796,974 and No. 795670 are affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 22, 1969, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1961.