[Civ. No. 11723. Third Dist. Jan. 15, 1969]

JESUS DIAZ et al., Plaintiffs and Appellants, v. MARY QUITORIANO, as Director, etc., et al., Defendants and Respondents.

Myron Moskovitz for Plaintiffs and Appellants.

Renzo A. Del Pero, County Counsel, for Defendants and Respondents.

PIERCE, P. J.—Petitioners sought a writ of mandate from the superior court directed to respondents Sutter County Welfare Department and its director. The court denied and dismissed the petition on the ground it lacked jurisdiction to issue the writ because petitioners had failed to exhaust their administrative remedies.[1] Petitioners appeal. We hold that no administrative remedy existed.

The superior court never issued an alternative writ. It reached its decision after a special hearing ordered by it on the jurisdictional issue. Since respondents were not required to answer an alternative writ (Code Civ. Proc., §§ 1087, 1089), the absence of an answer may not be deemed an admission of the allegations of the verified petition (*id.* §§ 462, 1109). For purposes of reviewing the jurisdictional question, we must assume the facts alleged in the petition are true. (See *Roberts* v. *Superior Court* (1916) 30 Cal.App. 714, 720 [159 P. 465] ; 2 Witkin, Cal. Procedure (1954) Pleading, § 484, p. 1471.) The petition avers: Petitioners Jesus Diaz and Soledad Diaz are "general guardians" (inferentially the parents) of minor petitioners Juana and Guadalupe Diaz. Respondents are the county agency and its director statutorily required to administer in Sutter County certain public social service (i.e., welfare) programs administered statewide by the Department of Social Welfare (hereinafter "Department"). (Welf. & Inst. Code, §§ 10054, 10058, 10600, 10800-10802.) On April 10, 1967, petitioner Jesus Diaz went to respondents and requested aid on behalf of his family. He was orally told by respondents that he was not eligible for any "categorical"[2] aid program

---

[1] ". . . Where an administrative remedy is provided by statute, relief must be sought from the administrative body and the remedy exhausted before the courts will act; a court violating the rule acts in excess of jurisdiction." (*Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468, 475 [64 Cal.Rptr. 808].)

[2] So-called "categorical" aid programs apparently are those public social services described in sections 11200-14653 of the Welfare and Institutions Code (e.g., Aid to Families with Dependent Children, Old Age Security, Aid to the Blind, Aid to the Needy Disabled, and Basic Health Care).

administered by the Department, including the Aid to Families with Dependent Children program (hereinafter "AFDC") (Welf. & Inst. Code, §§ 11200-11488).[3] Respondents did not advise him "of his right to submit a written application for such aid, nor was he advised of his right to an administrative appeal" from the county agency to the Department. Petitioners contend that "[b]ecause of said acts and failures to act" they have been unable to secure welfare aid to which they are entitled. They claim they were then, and are now, eligible for AFDC benefits.[4]

The mandate proceeding was commenced on petitioners' behalf by an attorney from a branch office of California Rural Legal Assistance, a service which furnishes free legal aid to indigents. Their pleading was framed as a class action.[5] Petitioners brought the action on their own behalf and as alleged "representatives . . . of all other persons residing in Sutter County who may be eligible for welfare benefits, but who have been, and will be, treated by respondents in the same manner as petitioners" unless the writ issues. This and other allegations that respondents did and will treat in a similar manner members of the class which petitioners claim to represent were supported by affidavits from four other welfare applicants which (liberally construed) allege that respondents advised none of them of their rights "to submit an application" and "to a fair hearing." The petition stated that the class members were numerous and that it was impracticable to bring them all before the court.

The petition *did not* ask that respondents be ordered to pay welfare benefits either to petitioners or to the alleged class members. It prayed for a writ "commanding Respondents *to advise* all persons requesting any form of aid from Respondents of their rights to make written application for benefits under the categorical aid programs administered by the State Department of Social Welfare, and *to advise* said persons that if they are dissatisfied with any action of Respondents, such

---

[3]Sections 11500-11507 were added by Stats. 1968, ch. 1408.

[4]Petitioners' conclusion as to eligibility is recited above simply as background for the specific relief sought by their petition. Whether or not they were eligible for welfare benefits is immaterial to the matters before us.

[5]Code of Civil Procedure section 382 provides in relevant part that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

persons have a right to request an administrative hearing before the State Department of Social Welfare." (Italics ours.) The Welfare and Institutions Code (§§ 10500, 11050) and implementing regulations of the department clearly place upon respondents a ministerial duty to give such advice, regardless of the particular applicant's eligibility for aid.[6]

Section 10950 of the Welfare and Institutions Code affords an administrative appeal from the county agency to the Department of Social Welfare. Petitioners had not pursued this remedy prior to the dismissal of their petition by the superior court. In relevant portion, section 10950 provides: "If any applicant for . . . public social services is dissatisfied with any action of the county department relating to his application for . . . aid or services, or if his application is not acted upon with reasonable promptness, or if any person who desires to apply for such aid or services is refused the opportunity to submit a signed application therefor, and is dissatisfied with such refusal, he shall, in person or through an authorized representative, without the necessity of filing a claim with the board of supervisors, upon filing a request with the department, be accorded an opportunity for a fair hearing."

Section 10960 establishes a rehearing procedure in the Department after decision by its director on the appeal provided by section 10950. Section 10962 permits an applicant to petition the superior court thereafter for review "upon questions of law involved in the case" and further states that "[s]uch review, if granted, shall be the exclusive remedy

[6]Welfare and Institutions Code section 10500 requires "Every person administering aid under any public assistance program . . . to perform his duties in such manner as to secure for every . . . [applicant] the maximum amount of aid to which he is entitled . . . ." Section 11050 states that "The application may be made in writing or reduced to writing upon the standard form prescribed in regulations of the department . . . ." Regulation 40-107.1 in the department's Public Social Services Manual declares that "The county is responsible for assisting the applicant . . . in understanding his rights . . . in relation to application" for such services. Regulation 40-109.1 in the same manual says that an applicant must be allowed to make application even though he appears ineligible. Regulation 2.2057 (recodified to 22-021, effective February 1, 1968) in the department's manual of AFDC policies and procedures states that "The county welfare department shall explain the right to request a fair hearing . . . to every applicant at the time of application" and that "Written notice of the right to a fair hearing shall be included in every notification to the claimant of the . . . denial . . . of aid. . . ." Pursuant to sections 10553, 10554 and 10809 of the Welfare and Institutions Code, the department's regulations on these subjects bind respondents with the force of law. (See e.g., *Rigley* v. *Board of Retirement* (1968) 260 Cal.App.2d 445, 450 [67 Cal.Rptr. 185], and cases therein cited.)

available to the applicant . . . for review of the director's decision.''[7]

 Petitioners complain that respondents failed to advise petitioner Jesus Diaz of his rights to make written application for welfare benefits and to appeal to the Department. Yet it is obvious from the filing date of the petition (April 21, 1967) that within two weeks after this alleged omission petitioners learned they had such rights, presumably from their attorney. As a practical matter, therefore, Jesus Diaz, as an individual, has no reason to appeal to the Department simply to obtain its decision that he is entitled to be told by respondents things he already knows. The petition before us, however, seeks more than that. It seeks to stop an alleged practice of nonaction by compelling respondents in the future ''to advise all persons requesting any form of aid from Respondents'' of the rights of which Jesus Diaz claims not to have been informed. Implicit in the statutory and regulatory requirements that such advice be given is a recognition by both the Legislature and the Department that welfare applicants cannot be expected to exhaust administrative remedies they do not know, and are denied the means of finding out, about. (Cf. *Gaylord* v. *City of Pasadena* (1917) 175 Cal. 433, 440-441 [166 P. 348].)

A legislatively declared purpose of the aid programs administered by the Department is ''to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed.'' (Welf. & Inst. Code, § 10000.) The same code declares that ''provision for public social services in this code is a matter of statewide concern.'' (*Id.* § 10600.) Thus performance by respondents of their duty to advise welfare applicants is a matter of public right. (See *Board of Social Welfare* v. *County of Los Angeles* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627].) '' '[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.' . . .'' (*Ibid.*; *Kappadahl* v. *Alcan Pac. Co.* (1963) 222 Cal.App.2d 626, 643 [35 Cal.Rptr. 354]; see *Fuller* v. *San Bernardino Valley*

---

[7]Sections 10960 and 10962 were amended in minor respects by Stats. 1968, ch. 1008.

*Municipal Water Dist.* (1966) 242 Cal.App.2d 52, 57 [51 Cal. Rptr. 120].)

In its aspect as a class action, this mandate proceeding seeks relief that is unavailable on the administrative appeal. As a class action, if supported by the evidence, it can yield a decree which can be availed of by every member of the represented class, present and future. (See *Weaver* v. *Pasadena Tournament of Roses Assn.* (1948) 32 Cal.2d 833, 842 [198 P.2d 514]; *Hurlbutt* v. *Butenop* (1864) 27 Cal. 50, 56; *King* v. *International Union etc. Engineers* (1952) 114 Cal. App.2d 159, 164-165 [250 P.2d 11].) It is a contradiction in terms to say that an administrative appeal under Welfare and Institutions Code sections 10950-10965 could effect this result. Moreover, those sections do not purport to permit it. Section 10950 only gives a right of administrative review to "any applicant for . . . public social services . . . in person or through an *authorized* representative." (Italics ours.) In describing the relief which the Department may grant, the code makes no mention of relief to a class. Sections 10957 and 10961 refer merely to decisions by the department that a particular applicant is entitled to services or financial aid. Section 10963 requires the county welfare director to "comply with and execute" such decisions, but they have no binding effect on the rights of future applicants. (See *Motor Transit Co.* v. *Railroad Com.* (1922) 189 Cal. 573, 586 [209 P. 586]; 79 A.L.R.2d 1126, 1131-1135.) The rule that a party must exhaust his administrative remedies prior to seeking relief in the courts "has no application in a situation where an administrative remedy is unavailable or inadequate." (*Martino* v. *Concord Community Hospital Dist.* (1965) 233 Cal.App.2d 51, 56 [43 Cal.Rptr. 255].) (See *Stocks* v. *Thompson* (1968) 1 N.C.App. 201 [161 S.E.2d 149, 154-155].)

It is true that, if the Department determines there is "a failure on the part of the county to comply with the provisions of this code or the established regulations," Welfare and Institutions Code section 10605 gives the Department discretion to withhold state and federal funds from a county, or take over administration of the county social services program, or bring "an action in mandamus or such other action in court as may be appropriate to compel compliance." However, this is not an "administrative remedy" within the exhaustion of remedies doctrine. ". . . . Our courts have repeatedly held that the mere possession by some official body of a continuing supervisory or investigatory power does not

itself suffice to afford an 'administrative remedy' unless the statute or regulation under which that power is exercised establishes clearly defined machinery for the submission, evaluation and resolution of *complaints by aggrieved parties."* (Italics ours.) (*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 566 [55 Cal.Rptr. 505, 421 P.2d 697].)

The orders denying and dismissing the petition are reversed and the matter is remanded to the superior court for further proceedings not inconsistent with this opinion.

Friedman, J., and Regan, J., concurred.