[Civ. No. 39554. Second Dist., Div. Five. Aug. 30, 1973.]

RESIDENTS OF BEVERLY GLEN, INC., Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Fadem & Kanner, Fadem, Kanner, Berger & Stocker and Michael M. Berger for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, John Daly and Claude E. Hilker, Assistant City Attorneys, Jerome Montgomery, Deputy City Attorney, Kaplan, Livingston, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Defendants and Respondents.

## OPINION

**COLE, J.**[*]—This is an appeal from a summary judgment granted to defendants City of Los Angeles[1] and U.S. Plywood-Champion Papers, Inc. (hereafter Plywood).

The summary judgment stated that it was granted "on the ground that by reason of plaintiff's lack of standing, plaintiff is not entitled to the declaration it seeks in its declaratory relief action, and upon the statutory ground that the action has no merit and no triable issue of fact is presented."[2] We determine that the plaintiff herein does have standing to bring the instant action and we accordingly reverse the summary judgment.

Plaintiff is a corporation, Residents of Beverly Glen, Inc. (hereafter "Residents"). It sought, by a document entitled, "Petition for Writ of Mandate and Complaint for Declaratory Relief" (hereafter "complaint"), filed May 1, 1967, to have set aside a conditional use permit granted by the City to Plywood and to have a section of the Los Angeles Municipal Code declared unconstitutional.

The procedural history of this matter is important to a determination of the questions presented. That part of Residents' pleading which sought a writ of mandate first came on for hearing. The court (Judge Allen), without making findings, denied the petition for a writ of mandate. It did not rule on the request for declaratory relief. Residents filed an at-issue memorandum and certificate of readiness as to that aspect of its action. The court (Judge—now Chief Justice—Wright) granted a defense motion to strike the memorandum. Residents appealed from the "judgment" denying the writ and from the order striking the memorandum. These appeals were dismissed, the Court of Appeal holding that they were taken from nonappealable orders since the failure to dispose of the declaratory relief aspects of the matter left the case without a final judgment (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles,* 275 Cal.App.2d 732 [80 Cal.Rptr. 303]).

The complaint identifies Residents as "a non-profit civic corporation whose membership consists of approximately 300 families resident in the

---

[*]Assigned by the Chairman of the Judicial Council.

[1]Also joined as defendants were the City Council and the Planning Commission of the City of Los Angeles and Calvin Hamilton, its director of planning. The summary judgment ran in their favor as well. It is not necessary to refer further to these defendants in their capacities as parties.

[2]No declarations or affidavits were filed in support of the claim "that the action has no merit and no triable issue of fact [with respect thereto] is presented." Since a summary judgment is involved and declarations or affidavits to support it are required by Code of Civil Procedure section 437c, we do not further consider this ground.

area within Beverly Glen, a natural major valley traversing the Santa Monica Mountains . . . and possessing a single thru traffic artery, Beverly Glen Boulevard . . ." The complaint alleges that the city adopted a Santa Monica Mountain master plan having as its goal the preservation of the mountain character, the prevention of traffic congestion in the mountains and the avoidance of change incompatible with existing uses. Control of density of population is alleged to be a fundamental goal of the plan. The complaint further refers to Los Angeles zoning ordinances and the provision of the Municipal Code (whose constitutionality is challenged) dealing with "planned residential developments." It is alleged that Plywood applied for and received a conditional use permit for a planned residential development. It is charged that a permit ultimately obtained by Plywood was improperly granted for a variety of reasons which it is unnecessary to detail here. Among other things, the complaint alleges that Plywood's project would increase population densities beyond that permitted by the master plan, that Beverly Glen Boulevard is already inadequate to handle existing traffic and that "any widening of [Beverly Glen Boulevard] would destroy the existing residential community of plaintiffs' members as such widening would require removal of their homes."

The basis for the motion for summary judgment was a declaration of counsel for Plywood, which simply called the court's attention, for purposes of taking judicial notice, to the allegations of the complaint and to the procedural history of the case; a declaration of a "title searcher" to the effect that official records showed that Residents did not own any real property; and a declaration by a "tax and bond searcher" that official records did not show that there was any real property in Los Angeles carried in the name of or assessed or taxed to Residents.

### Standing to Sue

Our conclusion that Residents has standing to maintain this action is based upon the fact that Residents has alleged in its pleading (1) that it is a corporation whose members live in the affected area and (2) that its members would suffer injury if the challenged project, to be constructed under a permit pursuant to an allegedly unconstitutional ordinance, is allowed to proceed.[3] These allegations are sufficient to distinguish the instant

---

[3]The petition does not squarely allege that the proposed project would require the widening of Beverly Glen Boulevard. It does allege, however, that that artery is inadequate to handle the traffic generated "by existing development" and that any widening of the boulevard would destroy the existing residential community of plaintiffs' members by requiring removal of their homes. Defendants, as the movants for summary judgment, did not present any declarations or affidavits negating these allegations, and we therefore read them as if they expressly asserted that the challenged project would require Beverly Glen Boulevard to be widened and would thereby destroy the homes of plaintiff's members.

case from *Greater Westchester Homeowners Assn., Inc.* v. *City of Los Angeles,* 13 Cal.App.3d 523 [91 Cal.Rptr. 720] and from *Associated Boat Industries* v. *Marshall,* 104 Cal.App.2d 21 [230 P.2d 379], each heavily relied upon by defendants.

In reaching our conclusions, we first note that environmental concerns underlie this action. Such matters are the proper subject of judicial consideration. ". . . Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." (*Sierra Club* v. *Morton,* 405 U.S. 727, 734 [31 L.Ed.2d 636, 643, 92 S.Ct. 1361].) Quoting this language, the California Supreme Court further referred to *Sierra Club* when it said, ". . . In dissenting Justice Blackmun *decried rigidity of the law that prevented reaching issues* involving 'significant aspects of a wide, growing, and disturbing problem, that is, the Nation's and the world's deteriorating environment with its resulting ecological disturbances' (405 U.S. at p. 755 . . .)." (Italics supplied.) (*Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 254 [104 Cal.Rptr. 761, 502 P.2d 1049].) See also *Associated Home Builders etc., Inc.* v. *City of Walnut Creek,* 4 Cal.3d 633 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].

In recent years there has been a marked accommodation of formerly strict procedural requirements of standing to sue (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158]) and even of capacity to sue (*Daniels* v. *Sanitarium Assn., Inc.,* 59 Cal.2d 602 [30 Cal.Rptr. 828, 381 P.2d 652]) where matters relating to the "social and economic realities of the present-day organization of society" (*Daniels* at p. 607) are concerned. Accordingly, we have seen a retreat from the formalism and rigidity referred to in *Friends of Mammoth, supra.* That process may be seen in several cases.

Thus, *Parker* v. *Bowron,* 40 Cal.2d 344 [254 P.2d 6], another case principally relied upon by defendants, held that a plaintiff who claimed to represent city employees in a suit concerning their wages, by reason of the plaintiff's position as secretary-treasurer of an unincorporated association of unions whose members were city employees, had no right or interest in the subject matter himself and could not represent the employees. Yet, in *Professional Fire Fighters, supra,* the court distinguished *Parker* on the technical ground that *Parker* involved an unincorporated association, saying "[b]ut here, we have no question of an unincorporated association, and

no basis for a claim that the class for whom the action was brought is without beneficial interest." (60 Cal.2d at p. 284).

Another illustration of the relaxation of former, more rigid standing requirements in order to permit an assertion of a "public" cause of action is seen in *County of Alameda* v. *Carleson,* 5 Cal.3d 730, 737 [97 Cal. Rptr. 385, 488 P.2d 953]. One of the plaintiffs and mandate petitioners there was the California Welfare Rights Organization, an unincorporated association. In an earlier case, *California Welfare Rights Organization* v. *Carleson,* 4 Cal.3d 445 [93 Cal.Rptr. 758, 482 P.2d 670], that organization (hereafter CWRO) had sued to enjoin the enforcement of certain regulations relating to welfare payments and had alleged that it initiated the litigation on behalf of all welfare recipients in the State of California (4 Cal.3d at p. 448). In *County of Alameda,* the court held that CWRO and its members were legally aggrieved by a judgment which had the effect of terminating grants to CWRO's members.[4] That conclusion followed from the court's determination that the underlying judgment had an immediate, pecuniary, and substantal affect upon the members' rights to welfare benefits. And, referring to its prior action in *California Welfare Rights Organization* v. *Carleson, supra,* the court said in *County of Alameda, supra,* 5 Cal.3d at page 737 footnote 6, that ". . . we impliedly acknowledged CWRO's standing to litigate on behalf of welfare recipients. . . ."

*Sierra Club* v. *Morton, supra,* 405 U.S. 727 is also instructive. In that case, the court inquired into the standing of the Sierra Club to challenge the granting of a permit for construction of a resort in the Mineral King area of Sequoia National Park. The Supreme Court stated, "[w]here the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' [citation omitted] as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." [Citation omitted.] Where, however, Congress . . . has provided by statute for judicial review . . . under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." (*Sierra Club,* 405 U.S. at p. 732 [31 L.Ed.2d at p. 641]). In that case, the statute was the *Administrative Procedure Act,* 5 United States Code section 702, which stated that, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to ju-

---

[4]Obviously, CWRO itself had no right to AFDC benefits. Yet, its standing to assert *its members' rights* was upheld by the Supreme Court.

dicial review thereof." In the posture of the case as presented, the Sierra Club had merely alleged that for many years by its activities and conduct, it had shown a special interest in conservation and in the maintenance of national parks and that "its interest" would be affected by the acts complained of. The United States Supreme Court rejected the Sierra Club's apparent position that it was unnecessary to allege individualized injury. The court held, however, that "[i]t is clear that an organization whose members are injured may represent those members in a proceeding for judicial review." (*Sierra Club,* 405 U.S. at p. 739 [31 L.Ed.2d at p. 645]). See also *United States* v. *SCRAP* (1973) 412 U.S. 669 [37 L.Ed.2d 254, 93 S.Ct. 2405]. In contrast, a "special interest" in the subject was not enough because if such an interest sufficed to confer standing ". . . there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization, however small or short-lived." (405 U.S. at p. 739).[5]

Building on *Professional Fire Fighters, supra,* the court in *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara,* 232 Cal.App.2d 564 [43 Cal.Rptr. 86], held that a professional association, organized for the purpose of representing its members who themselves had a beneficial interest in the subject matter of the complaint, had standing to sue. The action there, as here, involved a claim that a section of a municipal ordinance was unconstitutional. Aside from the fact that the complaint in *Santa Clara* included allegations that the plaintiff association there was duly authorized to bring the action on behalf of all of its members and the lack of such an express allegation here, we cannot distinguish the two cases.[6]

Class or representative actions are ". . . based upon the equitable doctrine of virtual representation which ' "rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." ' (*Bernhard* v. *Wall* (1921) 184 Cal. 612, 629 [194 P. 1040], quoting from 15 Ency. of Pl. & Pr. 629; . . ." (*Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695, 703-704 [63 Cal.Rptr. 724, 433 P.2d 732]). Those considerations of necessity and paramount convenience have received practical

---

[5]There is language in *Sierra Club* which, read by itself, would seem to require that the party seeking judicial review of an administrative action "be himself among the injured" in order to have a legally cognizable interest (405 U.S. at p. 735 [31 L.Ed.2d at p. 643]). Read as a whole, however, and in light of the court's further holding in *United States* v. *SCRAP, supra,* it is clear that Sierra Club stands for the proposition that an association which alleges that its members are actually injured and which represents them in the action, has standing to sue.

[6]Defendants' declarations in support of the summary judgment in the present case did not state facts establishing that plaintiff was unauthorized to bring the instant suit. Fairly read, the complaint implies such authorization. In a summary judgment context it was defendants' duty to negate the implication.

recognition in the use of homeowners' and similar assocations as vehicles for the bringing of suits which challenge governmental action. While decisions in such cases do not discuss the question of standing, and thus at best are implied holdings on the subject, they do illustrate that there is no insuperable obstacle to the maintenance of an action by a group whose members find themselves directly and adversely affected by the governmental action involved.[7]

Varied considerations of much importance are to be found in the concept that a party must be "interested" in order to maintain an action.[8] Statutes here involved refer to "[a]ny person interested" (Code Civ. Proc., § 1060—declaratory relief) and to the "party beneficially interested" (Code Civ. Proc., § 1086—mandate). *Associated Boat Industries* v. *Marshall, supra*, 104 Cal.App.2d 21, held that an association suing on behalf of its members to secure a declaration as to the validity of certain administrative regulations was not an interested person within the meaning of the declaratory relief statute there involved (Gov. Code, § 11440). We cannot distinguish that section from the declaratory relief section involved here (Code Civ. Proc., § 1060).[9] The decision in *Associated Boat Industries* v. *Marshall, supra*, was limited to the question "whether an incorporated trade association whose members are subject to the regulations attacked, but which itself is not subject to those regulations, . . . is an *'interested* person' within the meaning of [Gov. Code, § 11440]. . . . " (104 Cal.App.2d at p. 22.) (Italics in the original.)

Such limited consideration does not answer the question of standing posed here. A focus on the word, "interested" alone is too narrow. Rather,

---

[7]See e.g., *Associated Home Builders etc., Inc.* v. *City of Walnut Creek, supra*, 4 Cal.3d 633; *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 37 [56 Cal.Rptr. 672, 423 P.2d 824]; *Broadway Laguna etc., Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 767 [59 Cal.Rptr. 146, 427 P.2d 810]; *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222 [69 Cal.Rptr. 251]; *Cow Hollow Improvement Club* v. *Board of Permit Appeals* (1966) 246 Cal.App.2d 160, 165 [53 Cal.Rptr. 610]; *Russell* v. *Palos Verdes Properties* (1963) 218 Cal.App.2d 754, 757 [32 Cal.Rptr. 488]; *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 584 [39 Cal.Rptr. 708, 394 P.2d 548]; *Tustin Heights Assn.* v. *Bd of Supervisors* (1959) 170 Cal.App.2d 619 [339 P.2d 914].

[8]The concept of a party's required "interest" is important, among other things, on the questions of whether an actual controversy exists, jurisdiction, res judicata, mootness, and notice and adequacy of representation. See e.g., appendix to dissenting opinion of Justice Douglas in *Sierra Club* v. *Morton,* 405 U.S. 727, 753-754 [31 L.Ed.2d 636, 653-654].

[9]Government Code section 11440 reads in relevant part, "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure . . . ."

inquiry should be made as to "whether a particular plaintiff can fairly protect the rights of the group he purports to represent" (*Bowles . Superior Court*, 44 Cal.2d 574, 587 [283 P.2d 704]), an inquiry which "is necessarily dependent upon the facts and circumstances of each case" (*ibid.*).[10] *Associated Boat Industries* v. *Marshall* itself recognized but failed to apply the distinction between "interested persons" and "representatives" of such persons. Later cases do apply the distinction. We have already discussed *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara, supra. Greater Westchester Homeowners Assn., Inc.* v. *City of Los Angeles, supra,* 13 Cal.App.3d 523, is another good illustration. There, an association plaintiff alleged merely that it was organized by persons owning property or residing in the Westchester area for their mutual protection against damage to their property and persons caused by the Los Angeles International Airport. The association alleged that it sued as a representative of its members. In holding that it had no standing to maintain the action, the court stated, "[t]he complaint sets forth no facts bringing appellant under this rule [Code of Civil Procedure section 382] regarding representative actions. It is not alleged and there is nothing to indicate that appellant is a member of the interested class, consisting of homeowners who allegedly sustained property damage and personal injury from jet aircraft flights authorized by the city. *There is not even an allegation that appellant's members sustained property damage or personal injury from the acts which allegedly affected the Homeowners* [a group of individual plaintiffs]. Thus, it does not appear that either appellant *or the members whom it purportedly represents belong to the interested class. . . .*

"Appellant cannot give itself standing to sue by purporting to represent a class of which it is not a member *or a group of persons not belonging to the class.*" (Italics supplied, 13 Cal.App.3d at p. 526.)

The language from *Greater Westchester* which we have emphasized, shows that if, as is true in *Residents'* case, the pleading *does show* that the association's members have sustained injury that the association may itself have standing to represent its members.

---

[10]We recognize that *Bowles* v. *Superior Court, supra,* and other cases also require the existence of a community of interest between the members of the class with respect to the questions of law and fact involved. A leading case discussing this proposition is *Weaver* v. *Pasadena Tournament of Roses,* 32 Cal.2d 833 [198 P.2d 514], which itself, however, recognizes at least inferentially, that plaintiffs who "represent an association or protective committee" possess that community of interest. See 32 Cal.2d at page 843. An unincorporated association suing on behalf of its members, as in *County of Alameda* v. *Carleson, supra,* 5 Cal.3d 730, and an incorporated association similarly suing, as in *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara, supra,* 232 Cal.App.2d 564, or as in the instant case, possess the "common or general interest" required for the maintenance of a representative suit. (See, generally *Weaver* v. *Pasadena Tournament of Roses, supra,* at pp. 841-842.)

Also to be considered is the public nature of the question involved. We have already adverted to the fact that environmental problems clearly present justiciable issues. In a mandamus proceeding such as that presented here, it has been recognized that a petitioner must seek to protect a clear interest, e.g., *Parker* v. *Bowron, supra,* 40 Cal.2d 344; *Silva* v. *Cypress,* 204 Cal.App.2d 374 [22 Cal.Rptr. 453]. But "[t]he conditions of petitioner's right and respondent's duty . . . may be greatly relaxed, if not virtually abandoned, where the question is one of public interest" (5 Witkin, Cal. Procedure (2d ed. 1971) p. 3847). This rule was set forth by the California Supreme Court in *Board of Soc. Welfare* v. *County of L.A.,* 27 Cal.2d 98, 100-101 [162 P.2d 627]: "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. . . ." See also *Diaz* v. *Quitoriano,* 268 Cal.App.2d 807, 811 [74 Cal.Rptr. 358]; *Kappadahl* v. *Alcan Pacific Co.,* 222 Cal.App.2d 626, 643 [35 Cal.Rptr. 354].

■ We paraphrase from *Swaffield* v. *Universal Ecsco Corp.,* 271 Cal. App.2d 147, 171-172 [76 Cal.Rptr. 680], the rules which apply on summary judgment: A defendant moving for summary judgment must set forth with particularity competent evidentiary facts sufficient to establish every element necessary to sustain a judgment in his favor. The opposing party has no obligation to file any declarations or affidavits in order to defeat the motion unless the declarations of the moving party state facts establishing every element necessary to sustain a judgment. ■ A moving defendant must show clearly that plaintiff's action has no merit. If a plaintiff's cause of action could be based on either of two theories, he will not be subject to defeat by summary judgment where the defendant's declarations show only that one of the two theories cannot be established. It is the defendant's burden to rule out *all possible merit.* ■ Only if the declarations of the moving defendant considered in light of the issues raised by the pleadings together with the admissions and affirmative allegations set forth in the pleadings of the plaintiff would, standing alone support the summary judgment motion does the court look to any counter-affidavits and counterdeclarations.[11]

---

[11]Throughout their written presentations to this court, the defendants have adverted to Residents' failure to file counterdeclarations. As the discussion in the text clearly indicates, the courts do not look to counterdeclarations unless the defendants' allegations in support of their summary judgment motion are themselves otherwise sufficient to support the motion. Since they are not, in this case, Residents' failure to file any counterdeclarations is irrelevant.

■    Further, on a motion for summary judgment, considerable liberality should be used by the trial court in allowing amendments which do not completely and entirely depart from the general area of the cause set up in the pleadings. (*Estate of Kelly,* 178 Cal.App.2d 24, 29, 32 [2 Cal.Rptr. 634]; see also *Miller & Lux* v. *Bank of America,* 212 Cal.App. 2d 719, 728 [28 Cal.Rptr. 401].)

■    With these principles in mind, we turn to an examination of the instant case.

Residents' pleading is not a model. It lacks an express allegation of the kind found in *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara, supra,* 232 Cal.App.2d 564, that Residents was duly authorized to and does bring the action in a representative capacity on behalf of its members, or of the kind found in *California Welfare Rights Organization* v. *Carleson, supra,* 4 Cal.3d 445, that the action was initiated on behalf of all of a certain class of people.

We recognize that Residents, in its presentation to this court and to the trial court, has taken the position that its suit is not a class action, while at the same time it has consistently argued that it has standing to represent its members. It is a truism, however, that the nature of an action is to be judged by what it really is, not by how the parties characterize or label it. It is also clearly inferable from the complaint that Residents seeks to represent its members in this action.

Defendants' declarations in this case, showing that Residents does not own any property in Los Angeles County and is not a taxpayer therein,[12] negate any injury to *Residents itself* by reason of the city's granting of a conditional use permit to Plywood. But those declarations do not in any way negate the absence of any injury to Residents' members. Since Residents has alleged that its members suffered injuries, since it is clearly inferable that Residents seeks to represent those members, and since we have held that Residents had standing to seek redress for the injuries allegedly suffered by its members, defendants' declarations are insufficient to sustain the summary judgment (*Swaffield* v. *Universal Ecsco Corp., supra; Latson* v. *Zeiler,* 250 Cal.App.2d 301 [58 Cal.Rptr. 436]).

---

[12]In the trial court, Residents opposed the motion for summary judgment on the additional ground that defendants' declarations in support of the motion were improper under the rules of evidence. That claim has not been asserted on appeal and we therefore do not consider it here. (See *Coronet Credit Corp* v. *West Thrift Co.,* 244 Cal.App.2d 631, 642 [53 Cal.Rptr. 433]; *Sutter* v. *Gamel,* 210 Cal.App.2d 529, 531 [26 Cal.Rptr. 880].) Accordingly, we do not hold, impliedly or otherwise, that the declarations were sufficient to prove the matters stated therein (*Gardenswartz* v. *Equitable Life Assurance Soc.,* 23 Cal.App.2d Supp. 745 [68 P.2d 322]).

■ Whether or not a representative plaintiff does and can in fact adequately represent others is a question of fact for the trial court. And if the trial court decides that a named plaintiff cannot suitably represent the class, it should afford an opportunity for amendment (*La Sala* v. *American Sav. & Loan Assn.*, 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]). It may also be true that while all class suits are representative in nature, all representative suits are not necessarily class actions. (Compare the type of class action exemplified by *La Sala* v. *American Sav. & Loan Assn.*, *supra,* and by *Vasquez* v. *Superior Court*, 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964], with those set forth in *Professional Fire Fighters, Inc. v. City of Los Angeles, supra,* 60 Cal.2d 276; *Diaz v. Quitoriano, supra,* 268 Cal.App.2d 807, and *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara, supra,* 232 Cal.App.2d 564. See also Los Angeles Superior Court Class Action Manual, § 404.) The question of this possible distinction has not been argued or briefed to us and we do not decide it. In light of the factual nature of a representative plaintiff's ability to act as such and given our holding that Residents has standing to represent its injured members, the question of the adequacy of that representation, not discussed in the summary judgment declarations, is for the trial court.

We regret that this action may not now be decided on the merits. Two factors preclude us from proceeding to discuss the substantive issues raised in the briefs. One is the possibility that between now and the time this matter is again acted upon by the trial court, the law will have become clarified as to the necessity of findings in a mandamus proceeding.[13] Second, in the prior appeal of this case (*Residents of Beverly Glen* v. *City of Los Angeles, supra,* 275 Cal.App.2d 732) the court said, with respect to the declaratory relief aspects of this litigation, ". . . Plaintiff sought, in the trial court, a declaration of the invalidity of the section of the Los Angeles ordinance under which the City purported to act [fn. omitted]. It is entitled either to such a declaration or to an order under section 1061 of the Code of Civil Procedure refusing declaratory relief and judgment for defendants. Unless section 1061 is invoked, plaintiff is entitled to a declaration whether the result is favorable or unfavorable to it. It may be true, as defendants urge, that anything other than an unfavorable declaration would be logically inconsistent with the denial of a writ of mandate. But the trial court has not yet so decided. . . . Absent findings,

---

[13]In denying Residents' petition insofar as it sought a writ of mandate, the trial court made no findings. At least one case presently pending in the California Supreme Court may affect the requirement for findings (*Strumsky* v. *San Diego County Employees Retirement Assn.* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]). If it should develop that findings are required, the trial court in the instant case should take appropriate further steps with respect to the mandate aspects of this litigation.

we do not know what [the trial judge] decided with reference to the declaratory relief part of the case. As we have said above, plaintiff was entitled to some express determination of its prayer; . . ." (*Residents of Beverly Glen, Inc., supra,* 275 Cal.App.2d at pp. 735-736). That holding is the law of the case, binding on us as well as on the trial court, in the absence of some compelling reason to the contrary. (6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4552, 4557.)

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied September 18, 1973, and the petition of respondent U.S. Plywood-Champion Papers, Inc., for a hearing by the Supreme Court was denied October 31, 1973. Mosk, J., did not participate therein.