**ZEE MEDICAL DISTRIBUTOR ASSOCIATION, INC., A Nevada Corporation, Plaintiff,**

v.

**ZEE MEDICAL, INC., A California Corporation, Defendant.**

**No. C 98–2178 CRB.**

United States District Court, N.D. California.

Nov. 3, 1998.

Alan P. Hillman, Heuberger, Quinn, Gielen, Ruben, & Gibber, Baltimore, MD, Ralph J. Sutton, Bartko, Zankel, Tarrant & Miller, San Francisco, CA, for Plaintiff.

J. Thomas Rosch, Latham & Watkins, San Francisco, CA, for Defendant.

## ORDER

BREYER, District Judge.

### INTRODUCTION

Plaintiff Zee Medical Distributor Association ("ZMDA") is composed of distributor-ship companies located throughout the United States. It brings this action against defendant Zee Medical ("Zee") to assert the rights of its members in a contract dispute. Specifically, plaintiff seeks declaratory judgment on the question whether Zee Medical's contracts with its various distributors are terminable at will with reasonable notice, or terminable only for cause. Although some aspects of each ZMDA member's individual contract with Zee may differ, the contractual language in dispute here is identical for all contracts.

Because this is purely a question of state law, the parties justify their presence in federal court on diversity grounds. ZMDA's complaint alleges that it is a citizen of Nevada for diversity purposes, and that Zee is a citizen of California. Some of ZMDA's members are citizens of California as well, but they are not named parties in the suit.

On September 18, 1998, the parties were scheduled to appear before this Court to argue the merits of the case on summary judgment. However, before the scheduled hearing, the Court discovered two potential procedural defects in the case. First, the question arose whether ZMDA is a real party in interest in the lawsuit as required by Federal Rule of Civil Procedure 17. Rule 17(b) provides, essentially, that an association may only sue to assert the interests of its members if it is authorized to do so under the law of the state in which the district court sits, and the parties' briefs did not indicate whether such authority exists in the present case. Second, even if an association has state law authority to bring suit, the court may still be required to consider the citizenship of the association's members for the purpose of assessing diversity jurisdiction. Because ZMDA conceded that some of its members were California citizens, the question arose whether complete diversity was lacking. Accordingly, the Court ordered the parties to submit briefs on these two questions.

The parties have now submitted their briefs, and both maintain that this suit may properly be brought in federal court. Furthermore, in an effort to cure any defect in subject matter jurisdiction that may exist,

defendant has agreed not to object if plaintiff amends its complaint to specify that the claims of ZMDA's California distributors are not part of the case. In light of this collaborative effort by the parties to achieve federal jurisdiction, there are now three procedural questions before the Court:

1. Is plaintiff ZMDA a real party in interest in this dispute, such that it may bring suit on behalf of its members without violating Federal Rule of Civil Procedure 17?

2. If plaintiff may properly be considered a real party in interest, does the fact that its membership includes California corporations destroy complete diversity, thus depriving the Court of subject matter jurisdiction?

3. If the involvement of plaintiff's California members destroys complete diversity, may the parties cure this defect by stipulating that the rights of the California members will not be decided in the case?

## I. IS ZMDA A REAL PARTY IN INTEREST?

As mentioned above, ZMDA itself has no contractual dispute with Zee. Rather, it seeks declaratory relief on behalf of its individual members, who formed the association in 1997. As such, the question arises whether ZMDA is a real party in interest in the lawsuit.

Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Rule 17(b) goes on to specify the following guidelines for determining whether a party

has the capacity to sue or be sued as a real party in interest:

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases, capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States ...

■ It appears at first glance that because ZMDA is a corporation, the second sentence of rule 17(b) would apply, meaning that the Court must look to Nevada law to determine if plaintiff has the capacity to sue for declaratory relief on behalf of its members. However, federal courts have ruled that this sentence applies only when a corporation is suing to assert its *own* rights. When a party sues in a representative capacity, the third sentence of rule 17(b) applies, regardless of whether the party is a corporation or an individual. *See, e.g., Moore v. Matthew's Book Co.*, 597 F.2d 645 (8th Cir. 1979); Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, Vol. 6A, § 1561.[1]

Thus, under rule 17(b), the capacity of a corporation to sue on behalf of its members is determined by the law of the state in

---

1. This interpretation is perfectly sensible, since it avoids the incongruous result of requiring an individual who sues in a representative capacity to satisfy the laws of the forum state when seeking to demonstrate his authority to sue, while requiring a corporation that sues in a representative capacity to satisfy the laws of its state of incorporation. As Wright, Miller and Kane explain:

a literal application of Rule 17(b) means that a corporation acting as a representative would be able to satisfy the capacity requirement more easily than would an individual representative. This is because it is likely that the law of the forum state, which governs the capacity of an individual representative, will be more

restrictive towards a foreign representative than would the law of a litigant's domicile or place of organization, which determines the capacity of a corporate representative. As a result of this difference in treatment, an individual representative who lacked capacity under the law of the forum could not sue in a federal court in that state, even if he would have capacity under the law of his domicile. On the other hand, a corporate representative could bring suit in federal court as long as it had capacity to sue under the law of its state of incorporation.

Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, Vol. 6A, § 1561.

which the federal district court sits. As such, the Court must determine whether California law authorizes an association such as ZMDA to file suit on behalf of its members to seek a declaratory judgment regarding the application of state law to the terms of a distributorship contract.

As a preliminary matter, it must be emphasized that this inquiry is distinct from the question whether ZMDA satisfies the standing requirement that emanates from Article III of the U.S. Constitution. As the Supreme Court explained in *Hunt v. Washington State Apple Advertising Comm'n.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), an association that seeks to assert the rights of its members satisfies the jurisdictional requirements of Article III when: 1) its members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. There is no doubt that plaintiff meets these three elements here. However, this conclusion does not obviate the need to determine whether plaintiff satisfies the requirements of rule 17.[2]

It is not clear whether California law authorizes ZMDA to bring suit on behalf of its members in this case. The general thrust of the case law is that an association may sue in a representative capacity to assert a "public interest," but there is some doubt regarding an association's authority to sue to assert the "private" interests of its members.

For example, in *Residents of Beverly Glen, Inc. v. City of Los Angeles*, 34 Cal.App.3d 117, 109 Cal.Rptr. 724 (1973), an appellate court held that a homeowners' association had authority to sue to challenge governmental action because its complaint alleged that its members lived in the affected area of the challenged project and would suffer injury if the project was to proceed. In so holding, the court emphasized the "public nature" of

the issue, noting that an association's right to sue is greatly relaxed where the question is of public interest:

> In recent years there has been a marked accommodation of formerly strict procedural requirements of standing to sue and even of capacity to sue where matters relating to the social and economic realities of present-day organization of society are concerned.

*Residents of Beverly Glen*, 34 Cal.App.3d at 122, 109 Cal.Rptr. 724 (internal citations omitted). *See also Citizens Against Forced Annexation v. County of Santa Clara*, 153 Cal.App.3d 89, 96, 200 Cal.Rptr. 166 (1984) (holding that an association composed of taxpayers and residents had authority to sue in a representative capacity because it was asserting the "public right" to have agencies comply with proper annexation procedures).

By implication, these cases suggest that an association such as ZMDA, which seeks to assert the *private* contractual rights of its members, would not have authority to sue in a representative capacity. Other California courts, however, have been more lenient in terms of their willingness to grant an association this authority. For example, in *Twain Harte Homeowners Assn. v. Patterson*, 193 Cal.App.3d 184, 239 Cal.Rptr. 316 (1987), a homeowners' association brought an action to quiet title and to obtain declaratory relief with respect to a recreational easement. The court held that the organization had capacity to sue simply on the grounds that there was an adequate community of interests between the association and its members. *Id.* at 187, 239 Cal.Rptr. 316. And, in *Tenants Association of Park Santa Anita v. Southers*, 222 Cal.App.3d 1293, 1304, 272 Cal.Rptr. 361 (1990), a court allowed an association composed of mobile home tenants to bring suit against the owners of the mobile home park for improperly attempting to force the tenants out of their homes, ruling that the association had proper authority to sue based on

---

**2.** For cases in which a plaintiff association asserts the *constitutional* rights of its members, the standing inquiry may be treated as dispositive of the Rule 17 issue. *See, e.g., Apter v. Richardson*, 510 F.2d 351, 353 (7th Cir.1975). *See also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383

(1977); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). This, however, is a diversity case in which only matters of state law are at issue.

"considerations of necessity, convenience and justice."

In light of the foregoing, it is unclear whether California law provides ZMDA with the authority to bring suit here. However, for the purposes of this opinion, the Court will assume, without deciding, that ZMDA does have the requisite authority to sue on behalf of its members and therefore is a real party in interest in terms of rule 17.

## II. DOES THE COURT HAVE SUBJECT MATTER JURISDICTION?

Even if ZMDA satisfies the requirements of rule 17, the question remains whether there is diversity jurisdiction in this case. The parties argue that because ZMDA is a Nevada corporation and Zee is a California corporation, complete diversity exists and the association may maintain this action in federal court.[3]

Under normal circumstances, this argument would be correct. That is, if this case involved the contractual rights of ZMDA *itself*, as a corporation, then the diversity inquiry would stop with the citizenship of the named parties. However, under certain circumstances, when an entity sues in a representative capacity, diversity jurisdiction must be determined by looking to the citizenship of the organization's *members*. The question, therefore, is whether ZMDA falls into this category.

 The starting point for this inquiry is the longstanding principle that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (citing *McNutt v. Bland*, 2 How. 9, 15, 11 L.Ed. 159 (1844)). Perhaps somewhat confusingly, the question whether a party is "nominal party" as opposed to the "real party to the controversy" is not necessarily identical to the question whether a party satisfies the requirements of rule 17:

> There is a "rough symmetry" between the "real party in interest" standard of Rule 17(a) and the rule that diversity jurisdic-

tion depends on the citizenship of the real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases .... In appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17(a). To establish diversity, however, the union must rely upon the citizenship of each of its members.

*Navarro*, 446 U.S. at 463, fn. 9, 100 S.Ct. 1779. In short, even though ZMDA might formally be a "real party in interest," it may not be the "real party to the controversy" for the purposes of diversity jurisdiction.

In determining whether an organization suing in its own name is a "real party to the controversy," the law traditionally has drawn a distinction between corporations and unincorporated associations. Indeed, this distinction is formalized in 28 U.S.C. § 1332, the statute that authorizes federal courts to hear cases in diversity. Section 1332 allows a corporation to assert its own citizenship, rather than that of its shareholders, to establish diversity jurisdiction, whereas an unincorporated association, such as a labor union, is bound by the citizenship of all of its members. The principle behind this distinction is that a corporation has a distinct legal personality and distinct interests, while unincorporated associations remain "mere collections of individuals." *Navarro*, 446 U.S. at 461, 100 S.Ct. 1779. Thus, when an unincorporated association files suit, it does so in the interests of these individuals, and when "the persons composing such association sue in their collective name, they are the parties whose citizenship determines the diversity jurisdiction of a federal court." *Id.*

 The distinction allowing a corporation to assert its own citizenship in a diversity case presupposes that the corporation is suing on its own behalf. However, when an organization sues in a representative capacity, "its legal status is regarded as distinct from its position when it operates in an individual capacity." *Airlines Reporting Corp. v. S and N Travel. Inc.*, 58 F.3d 857, 862 (2d

---

**3.** There appears to be no question that the amount in controversy requirement of 28 U.S.C. § 1332 is satisfied.

Cir.1995). *See also National Association of Realtors v. National Real Estate Association,* 894 F.2d 937, 939 (7th Cir.1990). In other words, regardless of whether an organization has undergone the formal incorporation process, when it sues solely in a representative capacity it is not the "real party to the controversy" for the purposes of diversity.

At least three circuit courts have applied this rule in cases similar to this one. *Airlines Reporting Corp., supra,* involved a corporation that was created by a consortium of domestic air carriers in order to serve as a collection agent for transactions between the air carriers and travel agents. This corporation sued a travel agency, S & N, for failure to make payments to twenty-nine of the air carriers that were members of the consortium. Applying the "real party to the controversy" rule described above, the Second Circuit stated:

> In initiating this lawsuit ARC did not seek to protect any corporate interests of its own. Rather, ARC simply sought to fulfill its obligations ... as both a collection agent and an attorney for those twenty-nine air carriers owed money by S & N .... ARC does not suggest that it suffered any corporate damage or pecuniary loss itself from S & N's failure to pay for the issued airline tickets. Nor does ARC lay claim to any portion of the potential recovery obtained in the lawsuit .... Accordingly, we view the twenty-nine air carriers as the "real and substantial parties" to this controversy and turn to their citizenship for diversity purposes ...

*Airlines Reporting Corp.,* 58 F.3d at 862.

In *National Association of Realtors, supra,* a non-profit corporation composed of real estate agents sued a rival trade association for fraud and unfair trade practices. In considering whether diversity jurisdiction existed, the Seventh Circuit refused to limit its inquiry to the citizenship of the association itself. This rule, the court held,

> presupposes that the wrong is to the corporation rather than to the shareholders or members directly. If the defendants had blown up NAR's corporate headquarters, or broken a contract they had with the association, the wrong would be to the association even though the loss resulting

from it would be borne ultimately by the real estate agents who are its members .... Since it is the members of NAR who are the real parties in interest so far as the claim for damages on their behalf is concerned, it is their citizenship that counts for diversity purposes.

*National Association of Realtors,* 894 F.2d at 939–40. *See also Associated Insurance Management Corp. v. Arkansas General Agency, Inc.,* 149 F.3d 794, 797 (8th Cir.1998) (holding that a collection agent for New York and Arkansas insurance companies was not "real party to the controversy" in a suit brought against Arkansas citizens to recover premiums, thereby destroying complete diversity); *Lowsley–Williams v. North River Insurance Co.,* 884 F.Supp. 166, 169–70 (D.N.J.1995) (holding that diversity jurisdiction did not lie where company representing consortium of insurance underwriters sought declaratory judgment regarding members' liability to pay insureds, where citizenship of members destroyed complete diversity).

As with the above-cited cases, ZMDA, by coming to federal court to obtain a declaratory judgment on the language of contracts entered into by its individual members, asserts no corporate interest of its own. ZMDA is not a party to any of these contracts, nor would the declaratory judgment affect its rights or privileges as a legal entity in any way. Rather, it has come to federal court solely in its representative capacity to assert the rights of its members. As such, to use the phrase articulated by the Supreme Court, it comes to federal court as a "mere collection of individuals" who are, essentially, "suing in their collective name." *Navarro,* 446 U.S. at 461, 100 S.Ct. 1779. Those individuals are the real parties to the controversy in terms of diversity jurisdiction.

The Court must therefore look to the citizenship of ZMDA's individual members for the purpose of determining whether complete diversity exists. Because some of these members are California citizens, and because defendant Zee Medical is a California citizen as well, complete diversity is destroyed. Thus, as it currently stands, the Court does not have subject matter jurisdiction over the case.

## III. MAY PLAINTIFF CURE THE JURISDICTIONAL DEFECT BY AMENDING ITS PLEADINGS?

Upon being alerted to the Court's concerns regarding the potential absence of subject matter jurisdiction, the parties have collaborated to cure this defect by attempting to remove ZMDA's California members from the case. They wish to stipulate that plaintiff's original complaint be amended to read: "The Association . . . brings this action on behalf of its members with the exception of its members which are citizens of the State of California." The parties ask the Court to sign an order which approves of this stipulation. They further request that the Court sign an order providing that the judgment in this case shall not operate as collateral estoppel or res judicata in any action between Zee and any distributor that is a California citizen.

This request raises numerous procedural issues, all of which militate against the conclusion that the parties may change the litigation in this manner merely to obtain federal jurisdiction.

### A. 28 U.S.C. § 1653

First, the question arises whether this Court would have the authority to approve the parties' proposed stipulation that ZMDA's California members shall not be affected by this lawsuit. It might initially appear that 28 U.S.C. § 1653 grants the Court this authority. This statute provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

■ However, the Supreme Court has made clear that Section 1653 does not reach far enough to include this case: " § 1653 speaks of amending 'allegations of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). In other words, a court may not invoke Section 1653 "where diversity jurisdiction does not, in fact, exist." *Id.*

■ In the present case, as discussed in Section II above, it is exceedingly clear that ZMDA filed suit in a representative capacity on behalf of *all* of its members, including those from California. Thus, because the defendant is a California citizen, there is no complete diversity and the Court lacks subject matter jurisdiction. It is not merely an error in the pleadings that the parties ask the Court to cure in order to clarify the existence of diversity jurisdiction. Rather, they ask the Court to create jurisdiction retroactively where it did not previously exist. Section 1653 does not permit this. Because diversity jurisdiction "does not, in fact, exist" in the present case, the Court may not invoke Section 1653 to cure the defect.

### B. Federal Rule of Civil Procedure 21

■ Another potential source of authority for the Court to approve the parties' stipulation might arguably be Federal Rule of Civil Procedure 21, which provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." As the Supreme Court has stated, it is "well settled" that rule 21 invests district courts with the authority to allow a dispensable nondiverse party to be dropped at any time to cure a defect in subject matter jurisdiction. *Newman–Green,* 490 U.S. at 832, 109 S.Ct. 2218.

However, it is unlikely that the Court has the power to approve the parties' proposed stipulation under rule 21. That rule deals specifically with *misjoinder* of parties. Here, the parties are not asking the Court to drop certain *named* parties from the case so as to cure a misjoinder and thereby confer federal jurisdiction. Rather, they are asking the Court to *alter the nature of the litigation,* so that certain rights which are currently—and properly—being litigated in the case would no longer be in dispute. It would be an inappropriate extension of rule 21 to use it to contort the pleadings of a lawsuit merely to confer federal jurisdiction.

Thus, neither rule 21 nor Section 1653 appears to vest the Court with the power to grant the parties' stipulation with respect to the rights of ZMDA's California members. Under these circumstances, the Court's undertaking procedurally to cure the defect in

its diversity jurisdiction would be "nothing more than the meaningless act of a court having no adjudicative jurisdictional power." *Associated Insurance Management,* 149 F.3d at 797.

Furthermore, rule 21 gives a court discretion to drop a party in order to preserve jurisdiction, but does not require it to do so. *See, e.g., Fritz v. American Home Shield Corp.,* 751 F.2d 1152, 1154–55 (11th Cir.1985). This is not an appropriate case for a court to exercise its discretion in this regard. To do so, this Court would be required to approve an unnatural manipulation of the pleadings designed to keep a case involving a pure question of state law, with citizens of California on both sides of the dispute, merely because the parties-or perhaps more to the point, the litigators—apparently find it more convenient to be here. However, the framers of the Constitution did not provide for the creation of the federal court system in order to make life more convenient for parties who seek to adjudicate questions of state law. Therefore, even assuming that this Court had authority under rule 21 to alter this litigation in response to the parties' request, it would exercise its discretion to decline to do so.

### C. Federal Rule of Civil Procedure 19

Even if the Court had the power or the inclination to create the fiction that ZMDA's California members are named parties to the suit that could be dropped pursuant to rule 21, the Court would only be able to "drop" these parties from the lawsuit if they were "dispensable."[4] However, if the Court were to approve a stipulation that the rights of the California members are not at issue and they will not be bound in future cases, there is a strong possibility that the California members would become indispensable parties to the lawsuit under Federal Rule of Civil Procedure 19.

Rule 19 provides four factors for the Court to consider when determining if a party is indispensable: 1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, etc., the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Applying the first factor, it is likely that defendant would be unduly prejudiced by the fact that it would remain vulnerable to another lawsuit involving precisely the same issue.[5] Therefore, rule 19 may very well dictate that the California members are indispensable parties whose rights must remain at issue in the case to avoid undue prejudice against the defendant. Under these circumstances, the Court would not be permitted to "drop" these members from the lawsuit.

### D. 28 U.S.C. § 1359

The question also arises whether this effort by the parties to remain in federal court constitutes an improper effort to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. That section provides:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

At first glance, it might appear that Section 1359 is inapplicable to the case at hand, because it does not involve a party being "collusively made or joined." At best it can be said that the parties are inappropriately colluding to contort the pleadings in order to maintain their suit in federal court. However inappropriate this effort is, it might be argued, it does not fit squarely within the plain meaning of Section 1359.

The case does, however, fit squarely with the well settled principle behind the law. As the Ninth Circuit has confirmed, "[t]he federal anti-collusion statute is aimed at pre-

---

**4.** The fact that an analysis under Rule 21 requires the use of such tortured language further highlights its inapplicability to the present case.

**5.** Unless, of course, plaintiff's California members have agreed with the defendant that both parties will adhere to the decision of this Court and that neither will pursue further litigation. Such an agreement, however, would raise the specter of improper collusion to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. *See* subsection (D) below.

venting parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts." *Yokeno v. Mafnas,* 973 F.2d 803, 809 (9th Cir.1992). As such, the statute is to be construed broadly "to bar any agreement whose primary aim is to concoct federal diversity jurisdiction." *Airlines Reporting Corporation,* 58 F.3d at 862.

It is indisputable that this case involves nothing but "ordinary business litigation." It involves a pure question of state contract law; plaintiff asserts no federal right of any kind. Further, as evidenced by plaintiff's original complaint, the true nature of this dispute involves the contract language that *all* of its members are parties to—including those who reside in California. The proposed agreement to now exclude plaintiff's California members has the primary aim, indeed the *sole* aim, of creating federal jurisdiction. Therefore, there is at least a serious possibility that the parties' proposed stipulation constitutes a violation of Section 1359.

### E. Principles of Res Judicata and Collateral Estoppel

Another potential flaw with the proposed stipulation pertains to the parties' proclamation that ZMDA's California members will not be held to the principles of collateral estoppel or res judicata in any subsequent dispute with defendant. The parties cite no authority to suggest that a Court may change the law regarding the preclusive effect of a case merely because the parties request that it be done. In fact, it appears clear that because the California members are in *privity* with the plaintiff (indeed, they have been helping to fund the lawsuit and they have ample opportunity to participate directly if they so desire), they would be bound under the principles of preclusion in a future suit. *See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (noting that a person who "purposely bypassed an adequate opportunity to intervene" is arguably in privity and therefore bound under the principles of preclusion); *Truvillion v. King's Daughters Hospital,* 614 F.2d 520, 525–26 (5th Cir.1980) (noting that a person who consciously waived intervention in an action where his interests were represented should be prevented from prosecuting a second action seeking identical relief). Therefore, it is unlikely that the parties could stipulate that the California members would not be bound by collateral estoppel or res judicata in a later action against Zee.

In sum, the numerous procedural complications that arise from the parties' collaborative effort to remain in federal court despite the absence of subject matter jurisdiction highlight the fact that this case simply has no business in federal court. It is unlikely that the Court has the discretionary authority to approve the parties' stipulation to remove the rights of ZMDA's California members from the lawsuit. However, even if the Court did have such authority, it would decline to exercise it here.

### CONCLUSION

It might initially appear to the litigants in this case that the Court is splitting procedural hairs. This may be particularly frustrating when, as plaintiffs have argued, a prompt resolution to this legal dispute will serve their important business interests. However, it must again be emphasized that the federal courts are ones of limited jurisdiction. The principles of federalism require this Court to ensure that it does not infringe on the rights of states to resolve local disputes and maintain control over the development of state law. It would be a violation of these principles if the Court were to allow the parties to continue litigating this question of state law without first satisfying the requisite jurisdictional requirements. The case is hereby DISMISSED for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**